[Crim. No. 244: Fourth Appellate District.—July 26, 1933.]

THE PEOPLE, Respondent, v. MRS. ALLAN B. MONKS, Appellant.

Edgar G. Langford for Appellant.

U. S. Webb, Attorney-General, Warner I. Praul, Deputy Attorney-General, Thomas Whelan, District Attorney, and John T. Holt, Deputy District Attorney, for Respondent.

CAMPBELL, J., *pro tem.*—Appellant and one Wiley L. Watson were jointly tried upon an amended information filed by the district attorney of San Diego County charging them with having issued checks without sufficient funds in violation of section 476a of the Penal Code. The information contained four counts and the appellant was convicted on counts two and three. This is an appeal from

the judgment of conviction and from the order denying appellant's motion for a new trial. The grounds upon which appellant relies for a reversal of the judgment and order denying her motion for a new trial are as follows:

1. That the evidence adduced at the trial is insufficient to sustain the appellant's conviction of the charge contained in count two of the amended information.

2. That the evidence adduced at the trial is insufficient to sustain appellant's conviction of the charge contained in count three of the amended information.

3. That the trial court committed prejudicial error in its rulings upon objections to the admission of evidence during the course of the trial.

4. That the prosecuting attorney was guilty of prejudicial misconduct during the course of the trial.

It appears, in substance, from the evidence that the appellant at the time of the commission of the alleged offense was the wife of and living with one Allan B. Monks, the marriage ceremony having been performed December 19, 1930. Apparently Monks, at one time, had been a man of considerable attainments and education. However, at this time he had lost his reason to a degree bordering on idiocy, and he was under the influence of, and his person and acts were entirely controlled by, the appellant. Furthermore, the evidence showed that a trust fund had been established in Boston, Massachusetts, for Mr. Monk's benefit, and from time to time moneys were deposited in that fund to his account in a Boston bank. The trustee of this fund ceased to make deposits, owing to uncertainty on their part as to whether Mr. Monk was still living. This case was prosecuted upon the theory that appellant procured Mr. Monks to draw the checks described in the information on the Boston bank and issue them knowing that there were no funds in the account. The check described in the second count of the information was evidently signed by Mrs. Allan B. Monks, while the check described in the third count of the information was signed "Allan B. Monks". The check which is the basis of the second count of the amended information, upon which the defendant was tried and convicted, was given by Mrs. Monks to one C. S. Dorman on or about February 16, 1932, and was in the sum of $400. The defendant received cash on 'l he

amount of $223 and was credited on an old account she had with Mr. Dorman for the balance of the check. Dorman sent the check through the regular channels of business by cashing the same at his personal bank on the day of its receipt, and in due time, the check came back to him unpaid by the bank upon which it was drawn. This check was introduced in evidence, together with a protest of said check, it being protested on the ground "account closed". Appellant concedes that the record shows that the protest was in proper form, being in full compliance with the statutes of California, Civil Code, sections 3234, 3235, 3236 and 3237.

The check which was the basis of the third count of the amended information, upon which the defendant was tried and convicted, was given to Felix Morette, on or about April 1, 1932. It is for the sum of $875. This check likewise was sent through the regular channels of business and in due time the check came back to Morette unpaid by the bank upon which it was drawn. The check was introduced in evidence at the trial of this action, together with protest of said check. It was protested on the ground that there were "no funds". As with the Dorman check, it is likewise conceded that the protest was in proper form.

Appellant complains because of the lapse of time between the issuance of the checks and their protest. The evidence shows that this condition was sought for and occasioned by the appellant's own acts at and shortly after the time the crime was committed in an attempt to hide the crime. The evidence further shows that the appellant also lulled her victim, Morette, by telling him to rest assured that the check had not been paid because of some mistake, and this being so, she cannot be heard to complain of the condition which she deliberately created. The evidence shows that the defendant, after the check had been issued, fled to Long Beach, California, with her co-defendant, Watson (who was acquitted by the jury), and a Japanese chauffeur, and her husband, and that the defendant there secured an apartment under a fictitious name. From this place in Long Beach, the defendant finally fled to San Francisco, and was apprehended there by police officers. She denied that her true name was Mrs. Monks, or that she had ever lived in San Diego.

Appellant's counsel cites numerous civil decisions regarding the presentment for protest of checks within reasonable time. In *Ryckman* v. *Fox Film Corp.*, 188 Cal. 271 [205 Pac. 431, 434], the court said:

"The appellant makes the further contention that the check in question, having been made and delivered to Goldstein Company by the defendant on December 19th, 1917, and not having been endorsed or delivered by its said payee to the plaintiff until March 7th, 1918, the check was a stale check of which the respondent could not be held to be a holder in due course. In support of this contention the appellant cites us to sections 3134 and 3266b of the Civil Code (Stats. 1917, pp. 1540, 1560), which require that instruments payable on demand should be negotiated within a reasonable time. No evidence was presented in this case by either party showing the cause of the delay in presentment of this check, nor by the defendant offering any proof as to any loss occasioned to it by the delay."

██ The unpaid checks, with the said protests, were presumptive evidence of knowledge of the insufficiency of funds or credit with the bank upon which the checks were drawn. This rule of evidence is set forth in section 476a of the Penal Code as follows:

"Where such check, draft or order is protested on the ground of insufficiency of funds or credit, the notice of protest thereof shall be admissible as proof of presentation, nonpayment and protest, and shall be presumptive evidence of knowledge of insufficiency of funds or credit with such bank or depositary, or person or firm or corporation."

The rule has been approved in the case of *People* v. *Jay Bullock, alias Jay McCanless*, 123 Cal. App. 299 et seq. [11 Pac. (2d) 441]. The defendant in that case was tried on four counts of issuing checks without sufficient funds, and two counts of forgery. The court says:

" . . . the prosecution, in all instances, to support this necessary element of the charges, introduced in evidence 'protests' of the several instruments. This method of proof of this fact in actions of a civil nature has been sanctioned from time immemorial. It is recognized in such cases by both common law and statutory enactment. In matters in-

volving criminal charges, section 476a of the Penal Code, as amended in 1929, made provision for this class of evidence. . . . Nor are we forced, in sustaining the legislation in the instant case, to go as far as courts may properly go, as was said in *Yee Hem* v. *United States, supra,* [268 U. S. 178 (45 Sup. Ct. 470, 69 L. Ed. 904)], 'if the effect of the legislative act is to give to the facts from which the presumption is drawn, an artificial value to some extent, it is no more than happens in respect of a great variety of presumptions not resting upon statute'. (Citing cases.)''

 The time that elapsed from the date of issuing the check until its protest merely goes to the weight of the evidence and not to its admissibility. While the check and the protest thereof may have made, because of the passage of time between the issuance and the protest thereof, but slight evidence of the *corpus delicti,* still when considered with the evidence of appellant's flight it was sufficient upon which to make the admissions and confessions of the defendant admissible. (Pen. Code, sec. 1127c.) In the case of *People* v. *Hayes,* 72 Cal. App. 292, at 301 [237 Pac. 390, 394], the court sets forth as follows: " 'It is sufficient,' as a basis for the offer of defendant's confession or admissions, 'if there is some proof, or *prima facie* proof, or even slight proof of the *corpus delicti.'* (8 Cal. Jur., tit. 'Criminal Law', sec. 303.)''

The evidence shows that the appellant stated to a witness called by the People that she knew before she passed the check in question set forth in the second count of the information, that there was no money in the bank, and to the same witness appellant stated that she had passed bad checks on this bank after the commission of the offense for which she was tried.

 Appellant complains, and assigns as error, the admission of evidence showing offenses of a similar character to the one that she was being tried for, i. e., issuing checks without sufficient funds, citing the case of *People* v. *Schneider,* 126 Cal. App. 749 [14 Pac. (2d) 1018, 15 Pac. (2d) 540]. However, that case has no application here. The court does not hold that similar offenses of passing bad checks may not be proven upon a prosecution based on section 476a of the Penal Code. The general and prevailing rule is definite and certain that similar offenses to the

one at bar, may be proved to show guilty intent of the defendant. (*People* v. *Weir*, 30 Cal. App. 766 [159 Pac. 442]; *People* v. *Hamby*, 55 Cal. App. 37 [202 Pac. 907]; *People* v. *Barcovitz*, 163 Cal. 636 [126 Pac. 479, 43 L. R. A. (N. S.) 667].)

■ Appellant next complains and assigns as error that Allan B. Monks was called as a witness for the People. The record in this action shows that the appellant was not tried alone, but that Wiley L. Watson, no relative of Allan B. Monks, was a co-defendant and tried with appellant. Watson was acquitted by the jury upon this trial. The testimony shows that Wiley L. Watson cashed a check for $180 with one Sam Loeffler. The check was signed by Allan B. Monks, dated March 8, 1932. Under the Penal Code, section 31, it is provided:

"All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission . . . and all persons counseling, advising, or encouraging . . . lunatics or idiots to commit any crime, . . . or who, by threats, menaces, command, or coercion, compel another to commit any crime, are principals in any crime so committed."

It was the contention of the People in the case at bar that Wiley L. Watson perpetrated the crime he was charged with, by counseling, advising and encouraging a lunatic or idiot to commit the crime of issuing a check without sufficient funds therefor, and that then, after obtaining the check from the idiot or lunatic, wilfully and feloniously cashed the same as charged in the information. It became highly important then for the prosecution to use Allan B. Monks as a witness, if possible to do so, for the purpose of showing that he had signed the checks while in a mental condition that showed him to be a lunatic, or idiot or insane, and that he was thus an innocent agency for the commission of the crime while under the influence and control of Wiley L. Watson.

It was also the contention of the People in the case at bar that the defendant, Mrs. Monks, under count three of the information, based upon the check given to Morette, which check was signed by Allan B. Monks, was guilty as

a principal because she committed the crime as charged, by using the innocent agent, Allan B. Monks, whom she knew to be then insane, by advising and encouraging and counseling said insane person to write said check and that the defendant, Mrs. Monks, wilfully and feloniously gave the said check to Felix Morette.

It need not be argued that criminal guilt can be fixed when one secures another to perform a criminal act. The agent must be innocent. The cases all turn on the question of innocent knowledge or guilty knowledge. To simplify procedure, to do away with the technicalities of the common law, the legislature obliterated the distinction between principal and accessory before the fact, and declared them to be principals, but even at common law, one who procured an innocent person to commit an illegal act was a principal. Thus it is apparent that it was not only proper but necessary for the People to prove that Allan B. Monks was insane at the time of the issuing of the checks referred to. It became necessary to prove by Allan B. Monks, as against the defendant Wiley Watson, that the said Wiley Watson had taken advantage of him during the period of Monk's mental derangement. It is apparent from the record that Allan B. Monks was called as a witness against the defendant Wiley Watson.

The evidence was overwhelming as against both the defendants that at the time of the commission of the crimes alleged, Allan B. Monks was insane and both defendants knew of the insanity, and therefore the said Allan B. Monks was an innocent agent in the hands of the defendants.

The question whether or not a particular person is competent to become a witness is a question to be determined upon *voir dire* examination by the trial court, either in or out of the presence of the jury. The trial court, in this case, after conducting the *voir dire* examination, declared the proffered witness, Allan B. Monks, was incompetent to testify. Appellant insists that Allan B. Monks was and is insane and that therefore the presentation of the fact to the jury was error. However, the question of Allan B. Monks' insanity was a vital and proper question of fact for the jury to consider in determining the guilt of the defendant Wiley L. Watson.

■ Appellant next complains of the admission of the testimony of Dr. H. F. Andrews, over her objection, and assigns it as error. The testimony is in the nature of a eulogy of Allan B. Monks. There is no question but that the trial court committed error in admitting the testimony. It had no place in the trial of the case at bar. However, it cannot be said that the testimony in any way prejudiced the substantial rights of the appellant or resulted in a miscarriage of justice.

■ Appellant complains of misconduct of the district attorney, but an examination of the record fails to disclose any foundation for the claim.

After an examination of the entire record in this case, the evidence clearly points to the guilt of the defendant, and even though there was error in the admission of evidence, the verdict of the jury cannot be disturbed upon appeal because it has not resulted in a miscarriage of justice. (Sec. 4½, art. VI, Constitution.)

It follows that the judgment and order appealed from must be affirmed. So ordered.

MARKS, J., Concurring. — Appellant made numerous declarations against interest,· some of them amounting to confessions, which, if taken as true, amply established her guilt. The real question on this appeal is whether or not the *corpus delicti* of each crime of which she was convicted was sufficiently proved to permit the introduction of these confessions in evidence.

The check given to C. S. Dorman was dated February 16, 1932, made payable to Dorman's Auto Equip., and was protested on April 20, 1932, the reason given for nonpayment was "Account Closed". The Felix Morette check was dated April 1, 1932, and was protested July 29, 1932, the reason for its nonpayment being given as "No Funds".

We do not think it necessary in this case to lay down as a general rule without exception that the protest of a check several months after it was passed is sufficient to establish the *corpus delicti*, especially when the protest states as a reason for nonpayment that the account upon which it was drawn had been closed.

The overwhelming evidence of the flight of appellant after passing each of the two checks, under circumstances

showing a guilty knowledge on her part, should constitute sufficient evidence of the *corpus delicti* to permit the introduction of her confessions in evidence since the enactment of section 1127c of the Penal Code. " ' "Full proof of the body of the crime, the *corpus delicti*, independently of the confession, is not required, says Nelson, C. L., in *People* v. *Badgley*, 16 Wend. (N. Y.) 59, by any of the cases; and in many of them slight corroborating facts were held sufficient." ' . . . When the case is submitted for their verdict the jury may consider *all* the evidence in the case, including the extrajudicial statements, admissions or confessions of the accused, in determining whether or not all the elements of the offense charged and the connection therewith of the accused have been established to a moral certainty and beyond a reasonable doubt. If this were not the correct rule, proof of the extrajudicial statements, admissions, or confessions of the accused would have no utility except to connect him with the crime charged." (*People* v. *Selby*, 198 Cal. 426 [245 Pac. 426, 430].)

The check to Morette was deposited in a San Diego bank on the day it was written and sent through the usual channels to the Boston bank upon which it was drawn and in due time returned unpaid. Morette then took the check to appellant, who told him "the money is there and the check has got to be paid". He again deposited it with his bank for collection. Upon its second return unpaid he attempted to find appellant, but could not, as she had disappeared. The check was then sent to Boston and protested. It is evident that appellant by her representations to Morette and her flight was responsible for a large part of the delay in protesting this check. She should not be permitted to profit by her own fraud and artifice.

The account in the Boston bank upon which the checks were drawn was maintained solely by deposits by trustees of a trust fund. The evidence shows that in December, 1931, appellant knew that the deposits in the account had been stopped and shortly thereafter that the funds in the account had been exhausted. An attorney representing the trust estate informed appellant on February 8, 1932, that the trustees would make no further deposits in the Boston bank until Allan B. Monks was produced in his

office in San Diego as the trustees questioned the fact of his being alive. Mr. Monks was not produced at this office. This evidence, together with the checks drawn thereafter and coupled with evidence of her flight, was ample to establish the *corpus delicti* in each case and permit the introduction of the confessions in evidence. With the confessions in evidence the proof of guilt is convincing.

Barnard, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 24, 1933.