THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CATALINO GARCÍA POMALES, Defendant and Appellant.

No. CR-66-288.     Decided March 21, 1967.

214

*Raúl A. Feliciano* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for The People.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Appellant, Catalino García Pomales, was accused and convicted of the offense of statutory rape consisting in having had sexual intercourse with a minor, over 14 years of age, who was not his wife, and who "was mentally incapable of giving her consent to the sexual act because of a mental defect." He was sentenced to serve from two to five years in the penitentiary.

Appellant alleges that the trial court erred (1) in denying the request of defendant's counsel in the sense that the prosecutrix be preliminarily examined in the absence of the jury to determine her capacity to be a witness and in permitting her to take the witness stand making a scene prejudicial to defendant's rights which a fortiori influenced the outcome of the trial; (2) in denying the instructions requested by defendant's counsel; (3) in convicting defendant (a) despite there being evidence eliminating the indispensable element of intent and showing that the prosecutrix could give legal consent; and (b) on the basis of the incredible and contradictory testimony of two witnesses which must have created doubt in the minds of the jury.

For the reasons we shall state below we conclude that the trial court did not commit the errors assigned.

1.—When the prosecutrix was called to the witness stand, defendant's counsel requested that in a preliminary hearing and in the absence of the jury the court determine the witness' capacity before undertaking her examination. The trial judge determined that "That is determined by the examination to be made at defendant's trial." The prosecutrix's examination was brief and difficult because the witness did not answer, she made gestures with her head or hands, she made faces and cried. The trial court ruled that "The court believes that this witness is not competent to testify as witness."

■ Appellant argues that the prosecutrix's disability was known to the judge and to the prosecuting attorney because in this case a former trial had been held. The judge, motu proprio, ordered the holding of another trial because the court had erred in not charging the jury as to the corroboration of the prosecutrix's testimony. Appellant insists that the proper proceeding was to hold a preliminary hearing on the competency of the witness before the court without the jury, according to the decision in *People* v. *Arocho Medina*, 93 P.R.R. 160 (1966), and in the cases cited therein. The fact that the hearing in question was conducted in the presence of the jury was not an error. *Collier* v. *State*, 140 N.W.2d 252, 255 (Wis. 1966); *State* v. *Butler*, 143 A.2d 530 (N.J. 1958); *People* v. *Monks*, 24 P.2d 508, 511, 512 (Ct. App. Cal. 1933).

■ Moreover, in this case the prosecuting attorney could introduce the prosecutrix before the jury as a living proof of an essential element of the crime, that is to say, that because of her lunacy or other unsoundness of mind, whether temporary or permanent, she was incapable of giving legal consent (33 L.P.R.A. § 961). She was, by herself, an element of proof as to her mental incapacity to give consent, to be weighed by the jury, together with the testimony of the expert physician who testified on the same question.

In cases of this nature, the appearance and demeanor of the prosecutrix, her general intelligence as indicated by her answers to the questions of the prosecuting attorney and defendant's counsel, are important matters which should be considered in determining whether she lacked sufficient mental capacity to give legal consent to sexual intercourse. The mental capacity of the woman is a vital fact which the jury should consider upon determining appellant's guilt. *State* v. *Fox*, 31 N.W.2d 451, 455 (S.D. 1948); *People* v. *Monks, supra; People* v. *Boggs*, 290 Pac. 618 (Ct. App. Cal. 1930).

When the prosecutrix's testimony is introduced for the purposes indicated, the judge should thus specifically indicate it to the jury. *State* v. *Meyer*, 226 P.2d 204, 208 (Wash. 1951). In this case (a) the prosecutrix appeared in person to testify before the jury; (b) additional evidence of her incapacity to give legal consent was introduced—the testimony to that effect of a medical expert; (c) the occurrence of the carnal intercourse between appellant and the prosecutrix was amply established through the testimony of witnesses who were present; and (d) the trial judge charged the jury to the effect that "if by the evidence you are convinced beyond reasonable doubt . . . that at the time of the sexual intercourse . . . the prosecutrix was mentally incapable to give legal consent to the carnal act because of a mental defect. . . ."

We do not believe, therefore, that the instruction to the jury to the effect that the prosecuting attorney made the prosecutrix appear as part of the proof of her mental incapacity to give consent was so essential in this case that its omission prejudiced appellant's rights in a substantial manner to the extent of requiring the reversal of the judgment in this case.

2.—The trial judge denied the instructions requested by defendant's counsel to the effect that in cases like this one it is indispensable to establish that the degree of mental incapacity of the prosecutrix was of such nature that she could not understand the nature and consequence of the act she was carrying out and that if she knew what it was, what does it mean to have sexual intercourse with a man, then the offense charged has not been committed and that the mere fact that she has a weak mental capacity does not necessarily mean that she is incapable of consenting to sexual intercourse.

These instructions were unnecessary, for the judge had already charged the jury that the woman's consent to the

act of sexual intercourse becomes void by reason of some mental defect of such nature as to prevent the woman from realizing the implications, the nature or understanding of the sexual act; that for the woman's consent to constitute a legal defense, it must be the consent of a person who, because of her mental condition, understands the implications of the act of sexual intercourse, its concomitances, its consequences, its aspects, etc. The jury was charged further that "that mental defect should be of such a nature as to preclude the woman from giving her legal consent . . . . If the mental defect is one which does not bar the understanding of the consequences, of the concomitances, of the nature of the sexual act . . . I repeat, the mental defect must be of such a nature, of such a condition as to preclude the woman who suffers from it, from appraising, considering, evaluating, the consequences of the sexual act."

■ In our opinion, the instruction requested to the effect that if the woman, on the impulse of a strong sexual or animal passion even though insane, idiot or imbecile, submits to the act of sexual intercourse without resistance, it cannot be said that it was against her will or without her consent, did not lie. This instruction is based on an outmoded, minority doctrine and which is not justified in the light of the clear and precise provisions of the statute which defines the offense charged in this case.

3.—Relying on our decision in *People* v. *Hernández*, 93 P.R.R. 423 (1966), it is alleged that the court erred in convicting appellant despite (a) there being evidence eliminating the indispensable element of intent and (b) showing that the prosecutrix could give legal consent. It is argued that "to establish criminal intent is an indispensable element of the offense of statutory rape" and that the testimony of the expert, Dr. Torres Aguiar, destroyed or created reasonable doubt as to said element of intent.

■ Our ruling in *Hernández, supra,* does not have the scope of imposing upon the prosecuting attorney the obligation to establish the defendant's intent of statutory rape as appellant argues. On the contrary, we said in that case that it is reasonable that in cases like the present, the defendant have the opportunity to establish that he did not know that the prosecutrix was mentally retarded—circumstance which would justify the absence of criminal intent. But we added that "It is not to impose upon the prosecuting attorney the obligation to establish that the defendant was acquainted with the fact of the mental condition, but that the defendant may establish as a defense that he was not acquainted with that fact." In this case the defendant did not introduce any evidence.

■ The absence of such intent is not inferred from the psychiatrist's testimony. He testified that the prosecutrix's mental age "Was at the level of an infant, let us say, from four to five years old"; that she was intellectually capable for the act of sexual intercourse, but not emotionally; that "the sexual act is for her the union of a man and a woman, nothing else, without knowing consequences, nor using sound judgment, when it should be done and who should do it"; that definitively she cannot give her legal consent to sexual intercourse although she is inclined to said act because the feebleness of her mind is manifested in the sexual area; that "sexuality in her is infantile sexuality, she uses sex, she is not really sexual, what she is looking for is affection, acceptance, because she is a child." We do not see how it can be inferred that that testimony "destroyed or created a great reasonable doubt as to the indispensable element of intent" as it is argued by defendant's counsel, since appellant was not acquainted with the psychiatrist's testimony before having sexual intercourse with the prosecutrix and, further, said testimony did not justify the belief that the prosecutrix was not mentally retarded.

■ 4.—Defendant's counsel maintains that the testimony of the eyewitnesses, that is, of the prosecutrix's brother and father, is inherently incredible, contradictory and must have created reasonable doubt. In synthesis, the assignment is based on the fact that the brother's testimony is inherently incredible because he said that he followed the prosecutrix to the place where the acts occurred and that when he reached there he found that the defendant was having sexual intercourse with the prosecutrix; that it is not normal that a brother witnesses what is occurring to his sister and does not try to prevent it by word of mouth or by means of some action on his part but goes to look for his father who was ill and running a temperature, notwithstanding that the scene of the crime was a place difficult to reach even for a person 30 years old as was the prosecutrix's brother. He alleges that the father's testimony did not merit any credit either because although the only words between father and son when the latter returned from the scene of the crime were "come to see how your daughter is", nevertheless, the father had no difficulty in reaching said place located on an adjoining farm.

The brother testified that his sister did not go out alone from her father's house where she lived; that the day of the acts he was in the *batey* of his own house, half a cuerda from his father's, when he saw the prosecutrix going by alone. This surprised him. About two minutes after she crossed, he followed her. She reached the scene of the crime which was 50 or 60 feet from the witness' house in the midst of some weeds and trees; that said place was in a path which goes directly to his father's house; that since the witness lives on a slope, upon following his sister he went down and was below the scene of the crime; that upon reaching the place he saw appellant having sexual intercourse with the prosecutrix; that the only thing which occurred to him was to go and look for his father so that he could see

for himself, because if he told him he would not believe it; that he did not go up to the scene because appellant might get away and "the girl could take alarm and be hurt"; besides, the place was dangerous and too narrow to help her; that he did not find a stone to throw at him and if he had done so "I might get her and accidentally hurt her because it was a very uncomfortable place"; that he did not shout at them "because the girl might fall down and hurt herself as a result of the nervousness" and because if he shouted at them "I jumped over and tell my father and my father would not believe me then." This brother testified, at last, that he returned as quickly as he could from the said place to inform his father so that the latter would learn about the case. He told his father what he had seen. Although it could be said that this witness' reaction is not the usual one to attempt to prevent the act which he witnessed, the witness explained his reaction and it does not appear, nor any reason has been adduced, to conclude that the jury had acted unreasonably in believing it. From said testimony it can be concluded that between father and son more words than the ones indicated by appellant were said and it was possible to infer that in the course of the information given by the son to the father on what the former had seen, he must have necessarily indicated to him the place where the acts were occurring. It is not incredible that the father would rapidly reach the scene of the crime for in effect it was near and although it was difficult to reach from where the son situated himself to observe the acts of the offense, the place in question was in a path which went directly to the father's house, so that it must be assumed that it was not difficult for him to advance and reach the said place.

In view of the foregoing, the judgment rendered in this case by the Superior Court, San Juan Part, on February 21, 1966, will be affirmed.