[Crim. No. 1123. Third Appellate District.—July 29, 1930.]

THE PEOPLE, Respondent, v. HARRISON BOGGS, Appellant.

J. Oscar Goldstein for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—The defendant was charged with two acts of rape of a woman of the age of twenty-two years, alleged to be incapable, through unsoundness of mind, of giving legal consent to sexual intercourse. He was convicted on both counts and his motion for a new trial was denied. This is an appeal from the judgment of conviction and the order denying a new trial.

There is no contention that the defendant did not accomplish the alleged acts of sexual intercourse with the prosecutrix, who, as a result thereof, was pregnant at the time of the trial. The only ground urged for a reversal is that the evidence is insufficient to show that the prosecutrix was incapable of giving legal consent to such acts.

The mother of the prosecutrix was insane and was committed to one of the state hospitals in November, 1918. All of the witnesses agree that the prosecutrix is of subnormal mentality. She kept house on a farm for her father and brother for several years, doing the cooking and general housework and attending school during the same time. She was in high school until a short time before the trial. There is little evidence to show what progress she made in school, but one of her teachers in the high school testified: "I had her in citizenship one year and then I had her in the same class the second year, and in neither year did she pass satisfactorily, . . . and at the end of two years we gave her a quarter of a unit and considered it hopeless and let her go on. . . . We figured that she did about one-fourth of what work there was to be done with the minimum passing grade to clear the slate to let her go on." He further testified that "she has the mentality of

a child twelve years old.'' Expert witnesses for the prosecution testified that she has the mentality of a child of the age of ten to twelve years. Doctor Hamilton testified that she has not ''sufficient mentality to protect herself from the ordinary vicissitudes of life.'' She testified at the trial and, while she showed considerable intelligence in fixing dates and describing places and events, her understanding of the nature of sexual intercourse and its consequences was essentially that of a child. It is true that she seemed to know what constitutes the physical act and that pregnancy might result therefrom, but she apparently had little conception of other serious consequences which would follow. The following extract from her testimony, in answer to the question whether she resisted, illustrates her childish reasoning: ''If I didn't let him do it he would just stand there and wouldn't let me get anything done and I didn't want him to stand there all day and not let me get anything done for I was busy and I told him I was busy and had work to do and that I didn't have time. . . . I didn't want him to stay there all day for I wouldn't get anything done.'' Doctor Griggs, a witness for the defendant, referring to the foregoing and other similar testimony of the prosecutrix, testified on direct examination: ''She is a moron, a subnormal case. . . . She understands the difference between right and wrong. She understood and does understand that sexual relations should not occur between the unmarried people as a child would of twelve years of age—the act itself. In a case of low mentality such as this child has . . . it would not be entered into as it would be with an adult of her age—a normal child of her age—not for the thrill or experience or sensation, but more submitting to a strong will and, as she stated, that she might as well submit because she had some work to do, work that she wanted to finish; and a child perhaps eight or twelve years of age would have done the same thing. They probably would have used the same excuse or reasoning. At times her answer to our questions was rather intelligent, showing, of course, what she had assimilated by contact with older people, and then again the answers . . . showed the irrelevancy of a child rather than an adult.''

The prosecutrix testified: "He was trying to get after me the last of August and I fought him off the first time and he left me alone the first time, and then about a week after that he tried it again and I resisted him and he forced me down at first, and then he done it. . . . He grabbed me around the waist and laid me down . . . on the dining room floor. . . . And then another time it occurred, . . . he came in and said hello to me and then started in assaulting me and I started to fight and I managed to fight him off the first time and then he came back at me again and then he said if I didn't let him do it that he would go around to the school and tell all the boys, and I asked him if the boys would come around, . . . and he said 'Yes,' and I didn't want the boys coming around the place."

■ The testimony of the prosecutrix, which stands uncontradicted, tends in some degree to show that the defendant overcame her resistance by force and violence, but force and violence are not alleged in the information, the allegation in each count being that the prosecutrix was "incapable of giving legal consent to said act of sexual intercourse by reason of her being of unsound mind."

■ "In this species of rape neither force upon the part of the man, nor resistance upon the part of the woman, forms an element of the crime. If, by reason of any mental weakness, she is incapable of legally consenting, resistance is not expected any more than it is in the case of one who has been drugged to unconsciousness, or robbed of judgment by intoxicants. Nor will an apparent consent in such a case avail any more than in the case of a child who may actually consent, but who, by law, is conclusively held incapable of legal consent. Whether the woman possessed mental capacity sufficient to give legal consent must, saving in exceptional cases, remain a question of fact for the jury. It need but be said that legal consent presupposes an intelligence capable of understanding the act, its nature, and possible consequences. This degree of intelligence may exist with an impaired and weakened intellect, or it may not." (*People* v. *Griffin*, 117 Cal. 583, 585 [59 Am. St. Rep. 216, 49 Pac. 711]; *People* v. *Peery*, 26 Cal. App. 143, 145 [146 Pac. 44].)

The understanding referred to must, of course, be an intelligent understanding and the consequences include more than the mere physical consequences. As said in the Peery case, it must be assumed that the appearance of the prosecutrix "was such as to afford some evidence material to the issue." ██ When all the facts are considered together, it cannot be held that the evidence is insufficient to show that the prosecutrix was incapable of giving legal consent.

There is nothing in the record even tending to show a single mitigating circumstance in favor of the defendant. He must have known of the subnormal mentality of his victim. Notwithstanding such knowledge, he persisted in his lustful purpose until he overcame her weak resistance and accomplished her ruin. It would be a reproach to the state to hold that it affords no protection to morons of the weak mental capacity which the jury was warranted in finding the prosecutrix possessed against the base passions of unprincipled men.

The judgment and the order are affirmed.

Thompson (R. L.), J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 28, 1930.