STATE OF SOUTH DAKOTA, Respondent, v.
FOX, Appellant

(31 N. W.2d 451.)

(File No. 8941. Opinion filed March 3, 1948.)

**Francis J. Parker,** of Deadwood, for Appellant.

**Sigurd Anderson,** Atty. Gen., and **Benj. D. Mintener,** Asst. Atty. Gen., for Respondent.

SEACAT, Circuit Judge. The appellant was convicted of rape in the first degree on an information filed by the state's attorney of Meade County, which charged "that on the 8th day of May, 1946, within the County of Meade and State of South Dakota, the said James Fox, Jr., did wilfully, unlawfully, and feloniously have unlawful sexual intercourse with Kathryn Gerber, an unmarried female person, not the wife of the said defendant, and the said· Kathryn Gerber being a person of unsound mind and incapable of giving legal consent thereto."

The applicable sections of our code under which the defendant was tried and convicted are as follows:

"Section 13.2801. * * * Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator under either of the following circumstances: * * *

"(2) Where she is incapable, through lunacy or other unsoundness of mind, whether temporary or permanent, of giving legal consent; * * *."

"Section 13.2802. * * * The essential guilt of rape consists in the outrage to the person and the feelings of the female. Any sexual penetration, however slight, is sufficient to complete the crime. * * *."

"Section 13.2803. * * * Rape committed upon a female under the age of ten years, or incapable, through lunacy or any other unsoundness of mind, of giving legal consent, or accomplished by means of force overcoming her resistance, is rape in the first degree. * * *"

 The appeal to this court is from the judgment and from the orders of the trial court denying a new trial. The appellant specified five separate assignments of error, but has presented for our consideration assignments four and five which raise the sole question of the sufficiency of the evidence to support the verdict. Assignments of error not argued in the brief or presented in oral argument are deemed abandoned. State v. Whitmarsh, 26 S. D. 426, 128 N. W. 580; State v. Shephard, 30 S. D. 219, 138 N. W. 294; State v. Korth, 38 S. D. 539, 162 N. W. 144; judgment reversed on rehearing, 39 S. D. 365, 164 N. W. 93; State v. Uren, 39 S. D. 15, 162 N. W. 745; State v. Steensland, 56 S. D. 534, 229 N. W. 395. The appellant assigns as error without discussion that the evidence does not show the defendant accomplished an act of sexual intercourse with the prosecutrix. This claim is wholly without merit.

It appeared from the undisputed evidence that the prosecutrix, who was about thirty-four years of age and unmarried, resided with her parents on a farm near Cedar Canyon, in Meade County, South Dakota. On the afternoon of the day the crime is alleged to have been committed, the prosecutrix was alone in the home. Her mother and brother had left that morning by car for a tour of the Black Hills and the hired man was working in a field some distance from the house. At the trial, prosecutrix was called as a witness for the State, and testified at length under direct and cross examination. Concerning the act of sexual intercourse she testified in substance that the defendant came to the house right after noon while she was alone, and sat down; that he helped himself to a bottle of beer, and after a while

he tried to catch her; that she tried to run away but defendant caught her, tied her hands with a piece of rope, put her on the bed in her brother's bedroom, tore off her bloomers, took off his pants, got on top of her and had intercourse with her several times; and that he finally released her when her sister, Mrs. Ted Olson, came about five o'clock in the afternoon. This testimony was substantially corroborated by that of Mr. and Mrs. Ted Olson.

Mrs. Ted Olson, a sister of the prosecutrix, testified that she came to the Gerber home with her husband, Ted Olson, and her daughter Florence, and Ilene Knutson, between five and six o'clock in the afternoon, and found her sister crying and hysterical and unable to tell her what had happened, except to say that there was a drunk man in the house and she wanted to get rid of him; that the defendant was in the house sitting on a davenport drinking a bottle of beer; that she went into the bedroom and found the bed "all wrinkled up—crumpled up." There were beer bottles and cigarettes burning, some on the bed and some on the floor; there was a discharge on a blue flannel quilt that was on the bed which she identified as semen. Her sister's wrists above the hands were red and scuffed, and her sister's bloomers were hanging on the bed with the rubber torn.

Ted Olson, a brother-in-law of the prosecutrix, also testified that he arrived at the Gerber home about five o'clock in the afternoon in a car with his wife, daughter Florence, and Ilene Knutson; that the prosecutrix was "kind of in hysterics"; that the defendant came out of the house with a bottle of beer in his hand and appeared to be intoxicated; that there were bottles and cigarette butts thrown in the living room on the floor, and on the bed and floor of the bedroom; that he observed a discharge on a navy blue quilt on the bed which he positively identified as semen.

It is next claimed that the evidence does not establish beyond all reasonable doubt that the prosecutrix was, at the time of the alleged occurrence of the act of sexual intercourse between her and the defendant, either through lunacy or other unsoundness of mind, temporary or permanent, incapable of giving legal consent. The record of the testimony of the prosecutrix discloses that she was not a person of

normal or average intelligence; she did not know the names of her parents, her own age, or how long she had attended school; she did not comprehend the meaning of many simple questions put to her by the state's attorney or by counsel for the defendant. On cross examination and in answer to leading questions she testified that she knew what the defendant wanted, that it was not right, that she could have consented but did not. Later on in the same cross examination, when asked if she knew what the defendant did to her was wrong, she repeatedly answered that it was right. It also appears from the record that the prosecutrix had very little knowledge or conception of sex matters. When asked to tell what the defendant did, she said, "He caught me anyway and put me in bed and 'drizzled' me." When asked to explain what she meant, she said, "I can't—I don't know what I mean." It was only after much interrogation with leading questions that counsel for the state and for the defendant were able to obtain the sordid details of the sexual penetration.

Concerning the prosecutrix's mental condition, the witness, Mrs. Ted Olson, testified that her sister Katherine was born in 1912; that she attended school every year until she was sixteen or seventeen years old and never passed the second grade; that her sister never appeared bright at any time, and while she could dress herself with common clothes or do simple things, she could not tell time by the clock, cook, or sew, or do anything where it took mental ability to do it. She further testified on cross examination that her sister would not know the nature of an act of sexual intercourse.

Mrs. Philip Gerber, mother of the prosecutrix, also testified that she had six living children; that Katherine was thirty-four years of age, and had always lived with her, but did not have the same mental competency as the rest of her children; that she sent her to school five or six years but her daughter could never pass the second grade; that she could not wash dishes or do any cooking, washing or sewing; that she did some of the little things around the house. She further testified: "She does little things I show

her, but can't do what the rest of them do. If it is something plain, she can catch on. If it is something special, she can't do it. She is like a kid, childish. I have to tell her to do this. I can't give her baking or cooking, but she can help me peel a potato or bring in water, but to put out a meal, she can't do this." When asked if she had ever talked to her daughter about the sexual relations between man and woman, she said: "No, I never told her. There's no use. She is not smart enough to know what this means so I thought I would leave her alone. There is no use to explain."

The testimony of the prosecutrix tends in some degree to show that the defendant overcame her resistance by force and violence. The defendant was not charged with forcible rape but he was prosecuted under an information which alleged that the prosecutrix was incapable of giving legal consent to said act of sexual intercourse by reason of her being of unsound mind.

■ Upon proof of carnal intercourse, where the female is incapable, through lunacy or other unsoundness of mind, of giving legal consent, the law conclusively presumes that the carnal intercourse was by force and violence. Adams v. State, 5 Okl. Cr. 347, 114 P. 347.

■ "In this species of rape neither force upon the part of the man nor resistance upon the part of the woman forms an element of the crime. If, by reason of any mental weakness, she is incapable of legally consenting, resistance is not expected any more than it is in the case of one who has been drugged to unconsciousness, or robbed of judgment by intoxicants. Nor will an apparent consent in such a case avail any more than in the case of a child who may actually consent, but who, by law, is conclusively held incapable of legal consent. Whether the woman possessed mental capacity sufficient to give legal consent must, saving in exceptional cases, remain a question of fact for the jury. It need but be said that legal consent presupposes an intelligence capable of understanding the act, its nature, and possible consequences. This degree of intelligence may exist with an impaired and weakened intellect, or it may not." People v. Griffin, 117 Cal. 583, 585, 49 P. 711, 712,

59 Am. St. Rep. 216; People v. Peery, 26 Cal. App. 143, 145, 146 P. 44; People v. Boggs, 107 Cal. App. 492, 290 P. 618; Adams v. State, 5 Okl. Cr. 347, 114 P. 347; Hacker v. State 73 Okl. Cr. 119, 118 P.2d 408.

"The understanding referred to must, of course, be an intelligent understanding and the consequences include more than the mere physical consequences." People v. Boggs, supra [107 Cal. App. 492, 290 P. 619].

 The appellant contends, however, that the testimony of the presecutrix as to her struggles and efforts to get away from the defendant and avoid him demonstrated that she understood and knew the nature and character of the act claimed to have been perpetrated upon her person. The prosecutrix testified in substance that when the defendant tried to catch her she ran out of the house and tried to get away, but that he caught her anyway, tied her hands with a piece of rope, put her on the bed and accomplished the act.

While the resistanse of the prosecutrix to the advancements of the defendant was a proper matter for the jury to consider with all the other evidence in determining her knowledge and understanding of the nature and possible consequences of an act of sexual intercourse, it is not controlling. Resistance on the part of the female does not necessarily mean that she understands the nature and consequences of the sexual act, as she could have no knowledge or conception whatever of an act of sexual intercourse and still resist to her utmost any violation of her person. A child under similar circumstances would instinctively resist such an attack. Whether the prosecutrix possessed mental capacity to consent remained, under the evidence in this case, a question of fact for the jury.

In jurisdictions having statutory provisions like subdivision (2) of Section 13.2801, South Dakota Code of 1939, it has been held that whether the female possesses mental capacity sufficient to give legal consent must, save in exceptional cases, remain a question of fact for the jury. People v. Griffin, supra; People v. Peery, supra; State v. Simes, 12 Idaho 310, 85 P. 914, 9 Ann. Cas, 1216; Adams v. State, supra; Hacker v. State, supra; Lee v. State, 43 Tex.

126

Cr. R. 285, 64 S. W. 1047; Williams v. State, 125 Tex. Cr. R. 477, 69 S. W.2d 418; People v. Boggs, supra.

■ The appearance and demeanor of the woman alleged to have been ravished, her general intelligence, as indicated by her answers to the questions by the state's attorney and counsel for the defendant, are important matters entitled to consideration in determining whether she lacked sufficient mental capacity to give legal consent to the act of sexual intercourse. Hacker v. State, supra.

■ It must be assumed upon appeal that the appearance of the prosecutrix "was such as to afford some evidence material to the issue." People v. Peery, supra [26 Cal. App. 143, 146 P. 45]; People v. Boggs, supra.

■ The jury are the exclusive judges of the credibility of the witnesses and the weight of the evidence. They must decide all questions of fact. The jury believed from the evidence in this case that the defendant had sexual intercourse with the prosecutrix, and that she was at the time incapable, through lunacy or unsoundness of mind, of giving legal consent. We have carefully examined this record, and find that their verdict was based on competent evidence which is sufficient to justify their conclusions, and it cannot be disturbed or set aside by this court on appeal. State v. Painter, 70 S. D. 277, 17 N. W.2d 12; State v. Clark, 46 S. D. 490, 194 N. W. 655; State v. Wolfe, 64 S. D. 178, 266 N. W. 116, 104 A. L. R. 464.

The judgment is affirmed.

All the Judges concur.

SEACAT, Circuit Judge, sitting for HAYES, J., disqualified.