THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BEATRICE SUMNER, Defendant-Appellant.

Fourth District   No. 13150

Opinion filed June 24, 1976.—Modified upon denial of rehearing September 7, 1976.

Thomson, Thomson, Zanoni & Flynn, of Bloomington (Michael J. Flynn and Leon J. Zanoni, of counsel), for appellant.

Paul R. Welch, State's Attorney, of Bloomington (G. Michael Prall, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Defendant, Beatrice Sumner, was charged by indictment in the Circuit Court of McLean County with the offense of obstructing justice on May 29, 1973, at Stanford in that county in that "she did willfully, unlawfully and knowingly with intent to prevent the prosecution of a person, to wit: Jesse Donald Sumner, she knowingly destroyed physical evidence, to wit: the driver's license of Dawn Marie Huwe and a Red Lion membership card of Dawn Marie Huwe." Pursuant to a discovery request for a bill of particulars the State set forth the exact time of the offense as being between 7:30 and noon of the day in question. She was found guilty after a trial by jury and was subsequently sentenced to 1 to 3 years' imprisonment. On appeal she contends that her guilt was not proved beyond a reasonable doubt and that the court erred in denying her motion in limine, giving and denying certain instructions, and sentencing her to imprisonment.

Defendant's son, Jesse Donald Sumner, referred to by the witnesses as Donald, was convicted of the murder of Dawn Marie Huwe. His wife, Betty Sumner, was the principal witness for the State. Betty Sumner, her husband and family lived in Stanford as did defendant and her husband, C. P. Sumner. Betty Sumner testified that on the morning of July 29, 1973, after her husband had left for work and while washing clothes, she

discovered blood on her husband's overalls. Deciding, also, to wash her husband's jacket, she in the company of her then 15- or 16-year-old son Ron Shriver went to the adjacent garage to get the jacket. The jacket was found lying wrong side out on a table. Blood was on the front and arms of the jacket and what appeared to be blood clots were on the back. As she picked up the jacket, she noticed a packet which contained a driver's license and Red Lion membership card in the name of Dawn Marie Huwe lying on the table underneath the jacket. Evidence had previously been introduced that Dawn Marie Huwe possessed these cards and that these cards were never later found.

Betty Sumner testified that upon discovering these items in the garage, she, Ron, and a daughter then went to defendant's home nearby and asked defendant and her husband to come to the garage and see what she had found there. Although C. P. Sumner was intending to leave for work, he and defendant together with Betty and Ron went back to the garage. According to Betty, defendant and her husband both looked at the items. C. P. Sumner looked at the jacket and said "maybe Donald just cut his finger." Defendant then said to put the objects "back on the table and leave them alone." As the four left the garage C. P. Sumner said that if Donald was in trouble, Donald would have to take care of himself because he was "fed up." Shortly after this, Betty Sumner took her children into Bloomington. She then returned to Stanford and went into the garage where she found the table had been straightened out and the jacket and packet with the cards gone. She then went to defendant's house. Defendant told her that she had burned the items. Betty inquired of defendant if she thought something had happened, and defendant said that "it didn't look too good to her." The witness also stated that defendant said that she hated to see Donald go back to prison. The next day, May 30, Betty Sumner went to a friend's house where she saw in a newspaper a picture of a girl named Dawn Marie Huwe who was reported by that paper to be missing. The witness then went to defendant's home to tell the defendant what she had seen. Defendant answered that she had also seen the picture. The defendant then called her daughter to join them. When the daughter arrived, defendant and Betty were crying and very upset.

The testimony of Ron Shriver confirmed in general the testimony of his mother covering the period from the time blood-stained overalls were found until Betty Sumner left with the children to take them to Bloomington. Ron testified that after the defendant instructed his mother to leave the jacket and packet on the table defendant also said that she did not want these objects taken to the police. Ron did not purport to be present for the subsequent conversations that Betty Sumner purported to have with the defendant.

The evidence for the defense was primarily alibi. C. P. Sumner testified

that he was a railroad engineer and that on the evening of May 28 he made a run from Bloomington to Venice, Illinois, stayed overnight in St. Louis and made a return run from Venice to Bloomington starting in the morning of May 29. Mr. Sumner and his wife, the defendant, both testified that Betty came to their house on the morning of May 30, rather than May 29, and took them back to the garage to show them the jacket and the packet. Both admitted noticing that the jacket had spots on it, but both doubted that the spots were blood. Both admitted that they had seen the packet and that it contained a driver's license. C. P. Sumner admitted having made a statement to the effect that if Donald was in trouble it would be necessary for him to get himself out of the difficulty. Both denied that Betty Sumner was told not to move the jacket and the packet. The defendant denied destroying the objects. Jesse Donald Sumner testified for the defendant admitting that he had been convicted of the murder of Dawn Marie Huwe. He then stated that on May 30, 1973, he went to the garage at his home in the middle of the morning and took the jacket and packet and burned them.

Betty Sumner's testimony was weakened by the fact that from time to time she used a draft of a book she had written to refresh her recollection. This document contained some notes made by a person helping her with the draft. Her testimony with reference to having seen the picture of Dawn Marie Huwe in a newspaper on May 30 was contradicted. The friend at whose house the picture was reported to have been seen testified that the only local paper they took was the Bloomington Pantagraph. A librarian for that paper then testified that the picture in question was not carried in the Pantagraph until the evening edition of May 30 and that the earliest edition of the paper showing the picture would have been delivered in Stanford the morning of May 31.

■■ Defendant makes her argument with reference to the insufficiency of the evidence in terms of the failure of the trial court to grant the defendant's motions for directed verdict both at the close of the State's case and at the close of all of the evidence. Since defendant waived any error in the court's denial of her motion for directed verdict at the close of the State's case by introducing evidence (*People v. Gokey*, 57 Ill. 2d 433, 312 N.E.2d 637), we view the sufficiency of the evidence upon the basis of all of the evidence presented in the case. The testimony of Betty Sumner was that the defendant admitted destroying Dawn Marie Huwe's driver's license and Red Lion membership card after these documents were found with the bloody clothes of her son. The defendant knew that her son was a convicted felon, and she seemed worried that he might be prosecuted further. From this evidence the jury could infer that defendant believed that her son had inflicted bodily harm on the girl Dawn Marie Huwe, whose name appeared on the documents, and that

her son would be likely to be prosecuted for this offense. The finding of these objects would obviously be strong evidence in any prosecution of her son, and the jury might reasonably infer that she believed that to destroy these items would prevent his being prosecuted. Defendant's son Jesse Donald Sumner was in fact subsequently prosecuted for, and convicted of, the murder of Dawn Marie Huwe.

The instant case differs from the case of *People v. Eveland*, 43 Ill. 2d 90, 250 N.E.2d 654, relied upon by defendant. There persons named Sarver and Miller were arrested for armed robbery. The accused, a friend of Sarver, was later seen moving some of Sarver's personal effects from Sarver's trailer to an automobile. With the items being moved was found a gun of a type different than that used in the armed robbery and some burglary tools. The accused was convicted of attempt to obstruct justice by taking a substantial step toward the destruction or concealment of the physical evidence to be used in the prosecution of Sarver and Miller. Upon review, the Supreme Court held the evidence insufficient to prove the offense. There, none of the objects being moved were shown to be connected with the armed robbery. Here, as indicated earlier, the presence of the documents in the packet clearly tied Jesse Donald Sumner to the offense he had apparently committed against Dawn Marie Huwe.

Betty Sumner's testimony as to the occurrence in the garage and as to the date of this occurrence was corroborated by her son Ron. The testimony that she went to her friend's house and saw the picture in the newspaper on May 30 is rather severely weakened by the testimony of her friend and the newspaper librarian. However, Betty Sumner could have been mistaken that this occurred the day after the episode in the garage rather than two days thereafter. While it can be argued that Betty Sumner had some bias in favor of prosecution either out of spite against her husband's family or to promote the publication of some writing she was planning, her bias in any event would be much less than that of defendant, C. P. Sumner, and Jesse Donald Sumner. Under these circumstances the weight to be given the evidence was largely a matter of credibility to be decided by the jury, and we cannot say that the evidence was insufficient to prove the guilt of the defendant beyond a reasonable doubt.

Prior to trial, defendant made a motion in limine "to restrict all evidentiary presentation in the prosecution of this case to the 29th of May, 1973, between the hours of 7:00 a.m. and 12:00 noon, at Stanford, Illinois." In support of the propriety of the motion, defendant relies on the case of *McDonald v. People*, 126 Ill. 150, 18 N.E. 817, where an accused was charged with a conspiracy to defraud Cook County for work done and materials furnished. A bill of particulars stated that the fraud occurred at a particular school. At trial evidence of fraud by accused connected with

the furnishing of work and materials at other places was admitted generally. On appeal, the Supreme Court reversed noting that the purpose of a bill of particulars was to advise the accused of the date and place of the offense so that he might prepare his defense. The opinion gives no indication that any contention was made that the questioned evidence could have been considered as proof of the intent with which the accused acted at the place stated in the bill of particulars. Rather, the court stated that the evidence was irrelevant to proof of that offense and merely tended to prove offenses of which defendant had no notice under the bill of particulars.

■■ The granting of a bill of particulars, however, does not prohibit the introduction of evidence not occurring within the time span of the bill if that evidence is relevant and material to the proof of a charged offense occurring within that time span. (*People v. Simental*, 11 Ill. App. 3d 537, 297 N.E.2d 356.) Thus, the scope of the motion presented by defendant was so broad that the trial judge could not have properly allowed it. The only evidence received over defendant's objection or motion to strike which is argued on appeal to have been violative of the bill of particulars is testimony of Betty Sumner that in the afternoon of May 29 defendant washed a bloody rug that was found in the trunk of defendant's car. This evidence tended to show defendant's continuous apprehension that her son was likely to be prosecuted for an offense against Dawn Marie Huwe and her intent to destroy those objects which might serve as an evidentiary basis for such a prosecution. Although this testimony was evidence of an offense beyond the scope of the charge as limited by the bill of particulars, it was also evidence of intent as to the charge properly before the court and jury and admissible for that purpose. *People v. McDonald*, 62 Ill. 2d 448, 343 N.E.2d 489.

■■ The trial court refused defendant's tendered instruction on the defense of alibi. The Committee Comments for IPI Criminal No. 24.05 recommend that no alibi instruction be given because to do so is to comment upon a particular type of evidence. The presence of alibi evidence does not require the giving of the instruction. (*People v. Poe*, 48 Ill. 2d 506, 272 N.E.2d 28.) The trial court also refused defendant's tendered instruction defining the word "prosecution." That term is in common usage and when that is the case, no instruction of definition is required. (*People v. Parks*, 133 Ill. App. 2d 348, 273 N.E.2d 162.) If the charged offense could not have occurred prior to the commencement of the prosecution, the tendered instruction would have served the purpose of informing the jury as to when a prosecution starts. Black's Law Dictionary (4th ed. 1951) defines the word "prevent" as "to hinder, frustrate, prohibit, impede, or *preclude*; to *obstruct*; to intercept." (Emphasis added.) Thus, the offense charged here occurs when one

thwarts a prosecution not yet started. Over defendant's objection, the court instructed the jury that evidence had been received that defendant may have been involved in crimes other than those charged in the indictment and that this evidence was submitted for the limited purpose of proving defendant's intent. This instruction explained to the jury the purpose for which the testimony that defendant washed the bloody rug was received. No reversible error occurred in the court's ruling on instructions.

We find no reversible error in the proceedings leading to the conviction.

The evidence at sentencing showed that defendant was 64 years of age, had previously been convicted only of a traffic offense, and lived with her husband who was about to retire. Before imposing sentence, the trial judge noted this evidence but stated that he considered the destruction of evidence of a brutal murder such as that of Dawn Marie Huwe to be very serious. He stated that although the decision was entirely his, he had discussed the punishment to be imposed with other judges and members of the public and concluded that to impose a lesser sentence than imprisonment would deprecate the seriousness of the offense committed.

Private communications by a judge concerning a case are generally improper. (Ill. Rev. Stat. 1975, ch. 110A, par. 61(16); A.B.A. Standards Relating to the Function of the Trial Judge §1.6 (1972).) Section 7.1 of the A.B.A. Standards Relating to Sentencing Alternatives and Procedures (1968), however, recommends that groups of trial judges from the same court meet together periodically in sentencing councils to discuss the sentences to be subsequently imposed in pending cases. No case has been called to our attention passing directly upon the propriety of a trial judge having a private communication with members of the public as to the appropriate sentence to be imposed in a case.

■■ Factors to be considered by the court in sentencing include "the history and character of the defendant" (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1) and, as here, if probation or conditional discharge are being considered, whether such disposition would "deprecate [the] seriousness of the offender's conduct" (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—1). The sentencing hearing is not based on the ordinary rules of procedure (*People v. Adkins*, 41 Ill. 2d 297, 242 N.E.2d 258; *Williams v. State of New York*, 337 U.S. 241, 93 L. Ed. 1337, 69 S. Ct. 1079), but the court must exercise discretion to insure the propriety of information considered by the courts. (*People v. Crews*, 38 Ill. 2d 331, 231 N.E.2d 451; *People v. Ramsey*, 24 Ill. App. 3d 1038, 322 N.E.2d 547.) When as in *Ramsey*, the trial judge makes a private investigation concerning the character and conduct of the defendant, he is required to advise the defendant of the information being considered and to give the defendant an opportunity to rebut the information.

■■ The private conversations of the trial judge with members of the public in the instant case were apparently for the purpose of determining whether a sentence of probation or conditional discharge would "deprecate [the] seriousness" of the offense. An argument can be made that the best way to do this is to talk to others to sample public opinion. Such a procedure, however, affords the defendant no opportunity to challenge the bias of the information obtained. We deem the practice to be improper. We realize that it is difficult for the judge who must impose sentence in a case of notoriety to be unaware of public opinion as to sentence. For the judge to engage in conversations on the subject with members of the public only compounds the problem.

Unlike in *Ramsey*, the error in sentencing here was not waived by the failure of the defense counsel to object when the trial judge candidly stated for the record the information about his private conversations. There the judge's private information concerned defendant's conduct at the jail and if defendant had objected at the hearing, he could have been given an opportunity to rebut the information the judge considered. Here, there was no way for the defendant to rebut the information obtained from members of the public and considered by the judge.

Since we have determined that the trial judge's conversations with members of the public were improper and in view of the disposition we make of the case, we need not address the question of the propriety of the judge's conversations with other judges. We affirm the conviction but vacate the sentence and remand the case to the Circuit Court of McLean County for resentencing before a different judge.

Affirmed and remanded with directions.

CRAVEN and REARDON, JJ., concur.