THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARK McMULLEN, Defendant-Appellant.

Fourth District    No. 15910

Opinion filed December 3, 1980.

CRAVEN, J., dissenting.

James Yoho, of Champaign, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Gary J. Anderson and Larry Wechter, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:

Rape.

Jury found him guilty.

Sentence of 8 years.

We affirm.

On November 20, 1978, the defendant and two other teenage boys had sexual intercourse with the 16-year-old prosecutrix in a small room in Urbana High School. The three boys pulled down her pants, and while defendant McMullen was having intercourse with her, one of the other boys held her hands at approximately the level of her head. She testified that she did not want the boys to have intercourse with her, that she was crying during the incident, and that she told them she wanted to go home. Afterwards, the victim walked several blocks to her home and did not report the incident to her parents or to school officials.

The prosecutrix lived with her father, stepmother, and two younger sisters. She had been enrolled in a special education program for the educable mentally handicapped since beginning school. The stepmother testified that the victim performed such duties at home as vacuuming, dusting, and washing dishes. She could not, however, cook or run a washing machine or use a stove. The stepmother also indicated that the prosecutrix was never allowed to travel by herself or to go to school events alone, had never ridden a bus by herself, and could not find her own way around town. She could not shop alone because she did not understand the value of money and was never allowed to babysit because she could not handle a crisis.

The stepmother further testified that the victim's younger sisters (ages 11 and 6) were able to manipulate the victim and get her to do their jobs for them, following even the six-year-old's orders without objection.

The stepmother had spoken with the prosecutrix as many as one or two dozen times in the past year and a half or two years concerning sexual matters. The girl understood the physical part of sexual intercourse and knew where babies come from, but she did not, according to the stepmother, understand the emotional consequences of sexual intercourse or the consequences of having a baby and the effect it has on the mother's life. The stepmother had assisted the victim in obtaining birth control prior to November 20, 1978, but had no knowledge of any sexual activity on her part prior to that date.

Dr. Eva Maurer, a psychologist in the Urbana school system since 1964, testified as an expert witness. In April 1979, she had tested the prosecutrix to determine whether she still qualified for the educable mentally handicapped program. Her IQ scores ranged from 45 to 54, whereas the average range is 90 to 109. That score represented the mental

ability of a child beginning the second grade. Her score for social judgment and social reasoning was 2, while the mean score is 10. Dr. Maurer characterized the victim as shy, gentle, and passive, and testified that she was of the opinion that the victim would not comprehend the meaning, circumstances, responsibility, consequences, and nature of sexual activity. Dr. Maurer conceded, however, that the tests she administered do not measure sexual knowledge and awareness.

Section 11—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 11—1(a)) provides in relevant part as follows:

> "A male person of the age of 14 years and upwards who has sexual intercourse with a female, not his wife, by force and against her will, commits rape. Intercourse by force and against her will includes, but is not limited to, any intercourse which occurs in the following situations:
>
> * * *
>
> (2) Where the female is so mentally deranged or deficient that she cannot give effective consent to intercourse."

## I

■■ One of the elements of the offense of rape is the nonmarriage of the defendant and the victim. (*People v. Jones* (1977), 53 Ill. App. 3d 197, 368 N.E.2d 452.) At trial, the prosecution did not ask any witness whether the victim and the defendant were married. However, indirect evidence of nonmarriage can satisfy the State's burden of proof. (*In re Williams* (1974), 24 Ill. App. 3d 593, 321 N.E.2d 281.) In this case, unrebutted indirect evidence of nonmarriage consisted of the parties' dissimilar names, their youthfulness, the prosecutrix's attendance at school and residence with her parents, and her mental handicap. These factors are sufficient to prove beyond a reasonable doubt that the victim was not the defendant's wife.

## II

The jury was instructed that the defendant could be found guilty either because he had sexual intercourse with the complaining witness by force and without her consent, or because he had intercourse with her when she was so mentally deranged or deficient that she could not effectively consent to intercourse. The jury returned a general verdict of guilty, and we therefore have no indication upon which basis that verdict rests. However, when an indictment includes any good charge, a general finding of guilt under that indictment will be upheld. (*People v. Collins* (1979), 71 Ill. App. 3d 815, 390 N.E.2d 463.) Thus, if we find either that this act was committed with force, or that the complaining witness was incapable of giving effective consent, then the guilty verdict must stand.

There was ample evidence to prove beyond reasonable doubt that sexual intercourse was achieved by force: The complaining witness was lured into a room by a statement that a teacher wanted to see her, three boys pulled down her pants, one boy held her hands down at the level of her head during the defendant's intercourse with her, the victim stated at trial that she did not want the defendant to have intercourse with her, she told the boys she wanted to go home, and she was crying during the incident.

■■ The only evidence of force comes from the victim herself; however, such testimony is sufficient to support a finding of force, provided it is clear and convincing. (*People v. Olejniczak* (1979), 73 Ill. App. 3d 112, 390 N.E.2d 1339; *People v. McKnight* (1979), 72 Ill. App. 3d 136, 390 N.E.2d 379.) Her testimony is entirely believable, contains no significant contradictions, and meets the "clear and convincing" standard. Even though she did not testify to calling for help or making efforts to resist the three boys, the lack of such testimony is not necessarily an indication of the absence of force. The amount of force and resistance that is required for a finding of forcible rape will naturally vary with the circumstances of each case. (*McKnight.*) Thus, when the attacking party is so much stronger than the victim that resistance would be futile, the law does not require the victim to resist. (*People v. Houck* (1977), 50 Ill. App. 3d 274, 365 N.E.2d 576.) The prosecutrix here was almost certainly weaker than her three teenage male assailants. In addition, testimony shows that the act was committed in a small room off a larger room after school had been dismissed, suggesting that any cries for help may not have been heard.

■■ At the hearing on the defendant's motion for judgment notwithstanding the verdict and motion for a new trial, the presiding trial judge stated that the complaining witness' description of the incident was clear and convincing. Considering all the factors discussed above, we too find that her testimony was clear and convincing and sufficient to support a guilty verdict based on force.

### III

We also find that the evidence was sufficient to support a guilty verdict based on the victim's mental incapacity to consent to intercourse. Only two cases—both from this court—have dealt with the question of a rape victim's capacity to consent. In *People v. Blunt* (1965), 65 Ill. App. 2d 268, 274, 212 N.E.2d 719, 722, we said, "[T]he capacity to consent 'presupposes an intelligence capable of understanding the act, its nature and possible consequences.'" In that case, the court found that a prosecutrix who knew that intercourse could result in pregnancy and venereal disease, and also knew of the moral reprehensibility of illicit

intercourse, was capable of consenting to the act. Her IQ was around 77 or 78, and she could travel by bus, cook, clean, shop, and babysit.

In *People v. O'Neal* (1977), 50 Ill. App. 3d 900, 365 N.E.2d 1333, this court applied the standard set forth in *Blunt* and found that the victim did not have the capacity to consent. Her mental age was five, and she could perform only the simplest of mental tasks. At trial, she showed little understanding of the implications of sexual intercourse. We think that the victim in this case more closely resembles the victim in *O'Neal* than the one in *Blunt*. Her IQ was 45 to 54, considerably below that of the prosecutrix in *Blunt*. She was unable to do many of the acts that the complaining witness in *Blunt* could perform. In addition, there was testimony concerning the witness' passivity and susceptibility to being manipulated by even a small child. Also, the expert witness thought that the victim did not understand the nature and consequences of sexual activity.

Although the victim in this case apparently knew what an act of sexual intercourse entails, had some understanding of the physical nature of sexual activity, and knew "where babies come from," that is not the end of the inquiry of whether she was capable of giving effective consent. Several other States have used the same standard we applied in *Blunt* to determine a complaining witness' capacity to consent, *i.e.*, whether the victim is capable of "understanding the act, its nature and possible consequences." (*People v. Boggs* (1930), 107 Cal. App. 492, 290 P. 618; *Hacker v. State* (1941), 73 Okla. Crim. 119, 118 P.2d 408; *State v. Fox* (1948), 72 S.D. 119, 31 N.W.2d 451.) That language has gone largely unconstrued, though the courts in *Boggs* and *Fox* did observe that it requires more than an understanding of the mere physical nature of sexual activity.

■■ We find persuasive the discussion in *People v. Easley* (1977), 42 N.Y. 2d 50, 364 N.E.2d 1328. Construing a statute defining "mentally defective" as characterizing a person who has a mental disease or defect that makes him incapable of "appraising the nature of his conduct," the court said:

> "An understanding of coitus encompasses more than a knowledge of its physiological nature. [Citation.] An appreciation of how it will be regarded in the framework of the societal environment and taboos to which a person will be exposed may be far more important. In that sense, the moral quality of the act is not to be ignored." (42 N.Y.2d 50, 56, 364 N.E.2d 1328, 1332.)

In this case, the evidence showed that although the victim seemed to understand the physical nature of sexual activity, she did not understand

how such activity can affect a person's life and how illicit sexual activity is regarded by other people. Thus, she was unable to understand the social and personal costs of the act. Her inability to understand this important facet of the consequences and nature of sexual activity, combined with other testimony concerning her mental deficiencies, is sufficient to support a guilty verdict based upon her incapacity to consent to intercourse.

## IV

■■■ Next, the defendant contends that a finding of guilty based on the victim's incapacity to consent cannot stand unless the State shows that the defendant knew the victim was a mentally deficient person. Our rape statute does not specify knowledge or any other mental state that must accompany the elements of that crime. Under section 4—3(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 4—3(b)), when a statute does not prescribe a particular mental state applicable to an element of an offense, then (unless it is a strict liability offense) the State's burden for showing a *mens rea* may be satisfied by showing that the defendant acted with either intent, knowledge, or recklessness. (*People v. Utinans* (1977), 55 Ill. App. 3d 306, 370 N.E.2d 1080.) Rape is a general intent crime, not a strict liability offense. (*People v. Gold* (1967), 38 Ill. 2d 510, 232 N.E.2d 702, *cert. denied* (1968), 392 U.S. 940, 20 L. Ed. 2d 1400, 88 S. Ct. 2317.) Thus, the State could satisfy its burden by showing recklessness—*i.e.*, that the defendant consciously disregarded a substantial and unjustifiable risk that the victim's consent would be ineffective. Ill. Rev. Stat. 1979, ch. 38, par. 4—6.

In deciding that defendant's actions constituted force, we noted that the victim was lured into a small room off a larger room, defendant and his two companions pulled down her pants, one boy held her hands down while the defendant had intercourse with her, she told the boys she wanted to go home, and she was crying during the incident. These facts, if accompanying an act of intercourse by a normal person, would clearly be sufficient to show intent. Although we do not see defendant's diminished mental capacity as a defense (*McCarthy v. State* (Del. 1977), 372 A. 2d 180; *State v. Livingston* (1967), 182 Neb. 257, 153 N.W. 2d 925), the circumstances are sufficient to show recklessness on the part of someone with even his limited mentality.

## V

Finally, at oral argument, the defendant conceded that by introducing defense testimony he waived any error in the denial of his motion for a directed verdict at the end of the State's case. See *People v. Sumner* (1976), 40 Ill. App. 3d 832, 354 N.E.2d 18.

Because the defendant's conviction could properly have been based

upon either a finding of force or upon finding that the complaining witness was incapable of giving consent, the conviction is affirmed.

Affirmed.

WEBBER, J. concurs.

Mr. JUSTICE CRAVEN, dissenting:

The prosecutrix was led through the most crucial aspects of her testimony; and even with that help, there was very little, if any, testimony showing any acts of force. Moreover, there is no corroborating evidence of force. Thus, guilt must be based upon absence of effective consent, not the presence of force.

In relevant part, section 4—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 4—3) states:

"Mental State. (a) A person is not guilty of an offense, * * * unless, with respect to each element described by the statute defining the offense, he acts while having one of the mental states described in Sections 4—4 through 4—7.

(b) * * * If the statute does not prescribe a particular mental state applicable to an element of an offense, * * * any mental state defined in Sections 4—4 [Intent], 4—5 [Knowledge] or 4—6 [Recklessness] is applicable."

The fact that the "female is so mentally * * * deficient that she cannot give effective consent to intercourse" (Ill. Rev. Stat. 1979, ch. 38, par. 11—1(a)(2)) is an element of rape. It is equally clear that under the above-quoted statute the State had to prove that the defendant at least acted recklessly with respect to each element of rape, including the prosecutrix's mental incapacity.

The trial court granted the State's motion *in limine* to preclude the defendant from introducing evidence of his own mental deficiencies. This fact is not mentioned in the majority's opinion. This rule denied the defendant any opportunity to show that he did not have the requisite mental state or capacity to judge the prosecutrix's mental incapacity. This was error.

It cannot be, in this most unfortunate fact situation, that the victim was not capable of consent by reason of her incapacity while the defendant, *with the same incapacity*, is guilty of rape because he failed to appreciate the inability to give consent.

I would reverse for a new trial and allow evidence as to the mental deficiencies of the defendant.