THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
REYNALD MOLINA VELASCO, Defendant-Appellant.

Fourth District No. 4—90—0343

Opinion filed July 16, 1991.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

A jury convicted defendant, Reynald Velasco, of criminal sexual assault and attempt (criminal sexual assault) (Ill. Rev. Stat. 1989, ch. 38, pars. 12—13(a)(2), 8—4), and he was sentenced to consecutive terms of imprisonment of eight years and four years, respectively.

Defendant appeals and makes the following arguments: (1) the State did not establish beyond a reasonable doubt that the complainant was unable either to understand the nature of a sexual act or to give knowing consent; (2) defendant was denied effective assistance of counsel when his attorney failed to object at trial to complainant's competency to testify; (3) the videotape of complainant's interview with police was improperly admitted because it constituted inadmissible hearsay and violated his sixth amendment right to confrontation; (4) the videotape was improperly admitted because its prejudicial effect outweighed its probative value; (5) the trial court improperly admitted evidence of defendant's prior acts of child molestation; (6) the State did not prove sexual penetration beyond a reasonable doubt; and (7) the court improperly considered the report of an expert on sexual offenders in sentencing defendant.

We reverse and remand for a new trial.

Defendant was charged with two counts of criminal sexual assault upon complainant, his stepdaughter. Count I alleged that on June 2, 1989, he committed an act of sexual penetration on com-

plainant, and count II alleged that an act of sexual penetration occurred between July 27, 1986, and June 1, 1989.

Complainant is a 31-year-old woman who has Down's syndrome. On June 2, 1989, complainant's mother, Mercedes Velasco, came upon defendant, her husband, and complainant in Mercedes' bedroom. Mercedes testified that they were lying on the bed and defendant's face was on top of complainant's crotch. She also testified that both complainant and defendant were clothed, but that complainant was wearing big, wide-legged shorts. Mercedes was unable to tell whether there was contact between defendant's face and complainant's genitals.

After witnessing this scene and obtaining an order of protection against defendant, Mercedes received a five-page, handwritten letter from defendant, who was apparently attempting to reconcile their marital problems. In the letter, defendant admitted he "took advantage of [complainant's] body by touching her on her private parts" and that complainant "was not the first girl I did touch. All I can remember is I started at age six and it took 37 years before I got caught."

After answering questions regarding her competency to testify, complainant testified regarding the alleged sexual assaults. She referred to her genitals as her "pussycat" or "puddycat" and testified that defendant "played with herself" twice by blowing on her "pussycat." She indicated defendant touched her genitals, breasts, and buttocks. She testified that defendant's mouth touched her "pussycat."

Dawn Hula, a sexual-abuse therapist, spoke with defendant on June 6, 1989, four days after the incident alleged in count I. Defendant told her that he had been touching complainant's breasts and her vaginal area with his fingers, and that it had been occurring for approximately three years. Stephen Stines, defendant's boss, also testified that defendant told him that he had molested his wife's daughter, but that defendant "didn't go into a lot of detail."

At the end of its case in chief, the State introduced into evidence (and played for the jury) the videotape of complainant's interview with police.

Defendant testified that on June 2, 1989, he was lying in bed when complainant came in the bedroom and lay down beside him. He told her that her mother wanted her downstairs. When complainant did not leave, he pushed her away, but then noticed she was about to fall. Defendant testified that he grabbed complainant, and she grabbed his legs, and "we ended up in an awkward posi-

tion" when his wife walked in. Defendant testified that at one time complainant had enticed him to get on top of her, that they "rubbed bodies" fully clothed, and he ejaculated. Defendant admitted touching complainant's breasts, but explained he did it in a tickling or nonsexual manner. Defendant denied any sexual penetration occurred. The jury returned verdicts of guilty on both counts.

## I. Admission Of The Videotape Of Complainant's Statement To Police

The State introduced a videotape of complainant's interview with Officer Gene Woodard, made on June 12, 1989, approximately nine days after the alleged incident charged in count I. The interview took place at the YWCA's women's shelter. Complainant's mother and a social worker were also present, and they asked questions of complainant as well. The court admitted the videotape (1) as an excited utterance, and (2) as a corroborative complaint under section 115—10 of the Code of Criminal Procedure of 1963 (Code), permitting videotape evidence "[i]n a prosecution for a sexual act perpetrated upon a child under the age of 13." (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(a).) Defendant objected to the admission of the videotape at trial and in a post-trial motion. We find the trial court committed reversible error in admitting the videotape because it constitutes inadmissible hearsay.

### A. *The Videotape Constituted Hearsay*

 Hearsay is defined as testimony of a statement made out of court offered to establish the truth of the matter asserted therein. (*People v. Rogers* (1980), 81 Ill. 2d 571, 577, 411 N.E.2d 223, 226.) A statement offered for some purpose other than for the truth of the matter asserted therein is not hearsay and may be admitted. The State argues that the videotape was not introduced primarily to show the truth of the matters asserted (that defendant sexually assaulted complainant), but instead was offered (1) to permit the jury to compare how complainant spoke on the videotape with how she testified in court, (2) to illustrate the interviewing technique so the jury could assess the credibility of the complainant's complaint to police, and (3) to allow the jury to assess whether complainant had the mental capacity to consent to a sexual act. The State also contends that the videotape does not constitute hearsay because complainant was available in court for cross-examination. We do not find these arguments persuasive.

First, to permit the State to introduce evidence of a witness' prior statement simply to "compare" it to the witness' in-court testimony would nullify the rule against hearsay. Under this theory, any out-of-court statement made by a witness would be admissible to "compare" to the witness' in-court testimony.

Second, the videotape was not properly introduced to show the technique and circumstances surrounding the interview because no evidence was introduced at trial regarding what complainant said during the interview. Thus, there was no need to introduce the videotape to show that the statements complainant made in the interview were the result of acceptable interviewing technique.

Third, we do not agree with the State's contention that the videotape was properly admitted to help the jury assess whether complainant had the capacity to consent to a sexual act because the jury was able to assess complainant's ability to do so from her demeanor and in-court testimony; the videotape was not necessary for that purpose.

Finally, the State contends that an out-of-court statement is not inadmissible hearsay if the declarant is available in court for cross-examination. This is not the law in Illinois. The Illinois Supreme Court recently stated, " '[t]he presence or absence in court of the declarant of the out-of-court statement is *** irrelevant to a determination as to whether the out-of-court statement is hearsay.' " *People v. Lawler* (1991), 142 Ill. 2d 548, 557, 568 N.E.2d 895, 899, quoting M. Graham, Cleary & Graham's Handbook of Illinois Evidence §801.1, at 564-65 (5th ed. 1990).

### B. *The Videotape Was Improperly Admitted As an Excited Utterance or a Corraborative Complaint*

In the event that the court found the videotape to constitute hearsay, the State alternatively argues that the trial court was correct to admit it as an exception to the hearsay rule. We disagree.

### 1. Excited Utterance or Spontaneous Declaration

A statement constitutes a spontaneous declaration or excited utterance when there is (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement, (2) an absence of time to fabricate, and (3) the statement relates to the circumstances of the occurrence. (*People v. Gacho* (1988), 122 Ill. 2d 221, 241, 522 N.E.2d 1146, 1155.) In the present case, we find that the second criterion was not met.

The videotape was made approximately nine days after the alleged incident of sexual assault occurred. During those nine days, complainant discussed the details of the alleged sexual assault with her mother. Because of the lapse of time and the continued discussion of the incident, the statements made in the videotape could not constitute excited utterances.

■■ ■ In situations involving a child's statement regarding sexual assault (and the court and the State regarded complainant as a child in this respect because of her mental capacity), a court will generally allow more time to elapse in evaluating whether a statement was a spontaneous declaration. (*People v. Bitler* (1986), 146 Ill. App. 3d 477, 481, 497 N.E.2d 137, 139.) This court has also recognized that child victims or witnesses are more likely than adults to remain startled for a longer period of time and less likely than adults to fabricate. (*People v. Van Scyoc* (1982), 108 Ill. App. 3d 339, 342, 439 N.E.2d 95, 97.) However, even if we consider complainant a child witness and apply the general rule of permitting a greater lapse of time to occur before a statement loses its spontaneity, the statements complainant made in the videotape do not constitute excited utterances.

While we agree with the State that lapse of time is not the dispositive factor in analyzing whether a statement is an excited utterance, it is nonetheless an important factor. We also agree that questioning of a witness is permitted and does not necessarily destroy the spontaneity of the witness' remarks. However, in this case complainant made her statements in response to *leading* questions, a circumstance that weighs against a finding of spontaneity. Given all of the circumstances in this case, we conclude that the statements made in the videotape were not spontaneous declarations or excited utterances. The trial court erred in admitting the videotape on this basis.

2. Corroborative Complaint Under Section 115—10 of the Code

■ Last, we also find that the trial court improperly admitted the videotape under section 115—10 of the Code, which permits admission of videotape evidence in a "prosecution for a sexual act perpetrated upon a child under the age of 13." (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(a).) This section explicitly applies only in prosecutions for sexual acts perpetrated on children under the age of 13. The statute is framed in terms of age, not functional ability or IQ. Complainant, at 31, does not fall within its express terms, and this court is duty-bound to honor those terms. If, as a result of this de-

cision, the legislature decides to broaden those terms, so be it; we do not possess the authority to judicially amend legislative enactments.

### C. *Prejudicial Effect Versus Probative Value and Confrontation Clause Challenges*

Because we have found that the videotape constituted hearsay and did not fall within a recognized exception so as to permit its admission, and further because we have concluded that its admission amounted to reversible error, we need not address defendant's remaining issues pertaining to the videotape.

## II. COMPLAINANT'S COMPETENCY

Defendant argues he was denied effective assistance of counsel when his attorney failed to challenge the competency of complainant to testify. Complainant was questioned outside the presence of the jury to determine her ability to distinguish between the truth and a lie. In light of our holding that the admission of the videotape constituted reversible error, we need address this issue only briefly.

Under section 115—14 of the Code, every person is presumed competent to testify and will be held competent unless he or she is (1) incapable of expressing himself or herself concerning the matter so as to be understood, either directly or through interpretation, or (2) incapable of understanding the duty of a witness to tell the truth. (Ill. Rev. Stat. 1989, ch. 38, pars. 115—14(a),(b); *People v. Trail* (1990), 197 Ill. App. 3d 742, 748, 555 N.E.2d 68, 72.) Defendant had the burden of demonstrating that complainant was not competent. (Ill. Rev. Stat. 1989, ch. 38, par. 115—14(c); *People v. Hoke* (1991), 213 Ill. App. 3d 263, 272.) Although confused at times, complainant testified that she knew what the truth was and what a lie was; she testified that she would not tell any lies. The evidence demonstrated that complainant was competent to testify; thus, defendant's ineffective assistance of counsel argument fails.

## III. REASONABLE DOUBT

Defendant next argues that two elements of the offense of criminal sexual assault were not proved beyond a reasonable doubt: (1) complainant was unable to understand the nature of the act or was unable to give knowing consent, and (2) defendant committed an act of sexual penetration upon complainant. When reviewing defendant's claim that the State did not establish these elements beyond a reasonable doubt, this court must examine

" 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) We address these arguments only in order to determine whether to remand this cause for a new trial. If defendant was not proved guilty beyond a reasonable doubt, double jeopardy would bar his retrial. Our holding that the evidence was sufficient in no way implies that we have made a finding as to defendant's guilt which would bind the trial court on retrial. *People v. Taylor* (1979), 76 Ill. 2d 289, 309-10, 391 N.E.2d 366, 375.

### A. *Complainant's Ability To Consent to a Sexual Act*

Defendant was convicted under section 12—13(a)(2) of the Criminal Code of 1961, which states that a person commits an act of sexual assault if he "commits an act of sexual penetration and the accused knew that the victim was unable to understand the nature of the act or was unable to give knowing consent." (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(a)(2).) We find no merit in defendant's contention that the State failed to prove beyond a reasonable doubt that complainant was unable to understand the nature of a sexual act or to give knowing consent to it.

Complainant's mother, Mercedes Velasco, testified that complainant was born with Down's syndrome, and has lived with Mercedes since birth, except for one year when complainant lived with her sister. She stated that complainant's functional level was somewhere between that of a six year old and an eight year old, and that she had been classified as trainably mentally handicapped. She stated complainant had never indicated that she was cognizant or aware of sexuality or sexual contact, and "doesn't comprehend" where babies come from.

Cheryl Matthews, a mental health counselor who has bachelor's and master's degrees in education, as well as 13 years' experience working with mentally retarded children and adults, stated that complainant was moderately mentally retarded with an IQ of 53, and a functional level of a seven to eight year old. Matthews testified that based upon her experience and training, as well as her dealings with complainant over 5½ years, complainant would not be able to understand the nature of a sexual contact or overture. She

further testified complainant is unable to understand the "long-term ramifications" of a sexual act.

Defendant testified complainant engaged in various acts with sexual overtones, without apparently understanding their sexual nature, such as walking around the house nude, and attempting to join defendant and his wife in bed while they were engaging in sexual conduct. Complainant's behavior also indicated she did not understand or comprehend the nature of sexual acts.

Evidence describing complainant's functional level established that she can take care of her personal hygiene and usually dresses herself, is able to take care of the family dog, and knows her own telephone number and address. However, complainant is incapable of living independently, unable to tell the difference between coins, and has no concept of time.

In *People v. Blunt* (1965), 65 Ill. App. 2d 268, 273, 212 N.E.2d 719, 722, this court stated that mere mental derangement or deficiency was insufficient to show a rape victim could not give knowing consent because of her mental handicap, and that the mental deficiency "must be of sufficient magnitude to throttle effective consent." However, this standard is not met merely by showing that a complainant understands what an act of sexual intercourse involves, has some understanding of sexual activity, and knows "where babies come from." (*People v. McMullen* (1980), 91 Ill. App. 3d 184, 189, 414 N.E.2d 214, 217.) Although the complainant in *McMullen* seemed to understand the physical nature of sexual activity, she did not understand how sexual activity affects a person's life and how illicit sexual activity is regarded by others. The court concluded as follows:

> "[She] was unable to understand the social and personal costs of the act. Her inability to understand this important facet of the consequences and nature of sexual activity, combined with other testimony concerning her mental deficiencies, is sufficient to support a guilty verdict based upon her incapacity to consent to intercourse." *McMullen*, 91 Ill. App. 3d at 190, 414 N.E.2d at 217.

Based on *Blunt* and *McMullen*, the State in this case established beyond a reasonable doubt that complainant was unable to give effective consent to the acts of sexual penetration defendant committed.

## B. *Sexual Penetration*

Defendant next claims that the State did not prove beyond

a reasonable doubt that he committed an act of sexual penetration on complainant, which is an element of the offense of criminal sexual assault. (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(a)(2).) Sexual penetration is defined as "any contact, however slight, between the sex organ of one person and the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration." (Ill. Rev. Stat. 1989, ch. 38, par. 12—12(f).) The offense of criminal sexual assault does not require physical penetration of complainant's vagina. *People v. Gardner* (1988), 172 Ill. App. 3d 763, 766, 527 N.E.2d 155, 157.

▮▮▮ The State proved beyond a reasonable doubt that sexual penetration occurred. Defendant acknowledged that he had made certain admissions from which the inference could be drawn that he had committed acts upon the complainant which fall within the legal definition of sexual penetration:

"Q. [Defense counsel]: Okay. Also in there you wrote that you have confessed to your boss, Mark Stines. What did you confess to?

A. [Defendant]: I said, 'I think I did it. I think I did it—what they are accusing me.' And then I explained to him what was the reason why I did it. You know, the way I look at it they are charging me of penetration.

Q. Well, at that time how would you have defined the term 'sexual penetration'?

\* \* \*

A. To me, sexual penetration is—you are sticking something in somebody's body. You know. That's sexual penetration."

While at trial defendant denied that any sexual penetration occurred, the jury could choose to disbelieve this testimony and give credence to the earlier statement he made to his boss that he had committed an act of sexual penetration. The jury could conclude that defendant changed his story at trial in order to avoid conviction. While complainant's testimony may have been inconsistent at times, she did state that an act occurred which falls within the statutory definition of sexual penetration (defendant's mouth touching her genitals). It was within the province of the jury to determine the weight to be given that testimony and to find it credible. Thus, there was sufficient evidence in the record to support the jury's

finding that sexual penetration had occurred beyond a reasonable doubt.

## IV. OTHER CRIMES EVIDENCE

Defendant also challenges the admission of other crimes evidence, *i.e.*, evidence of defendant's admissions about prior acts of child molestation introduced through the testimony of Stephen Stines, defendant's supervisor, and also through a letter defendant wrote to his wife. Stines testified that on October 2, 1989, defendant told Stines, without going into details, that he had molested his wife's daughter but that defendant "just said that he touched her in her private parts." Stines also testified that defendant told him he molested his neighbor's daughter in Delaware, and "his best friend's little girl here in Illinois." Stines stated defendant said he molested girls to "get his kicks," and that he "had also used the idea that it would be their little secret, as he had done with his wife's daughter, and that little girls were easy." In the letter, defendant stated that complainant was not the first girl that he touched, that he started at age six, and that it took 37 years to get caught.

As a general rule, evidence of other crimes committed by the defendant, independent of the crime for which he is being tried, is inadmissible. (*People v. Baptist* (1979), 76 Ill. 2d 19, 27, 389 N.E.2d 1200, 1204.) The law distrusts the inference that because a person committed other crimes, he is more likely to have committed the crime charged. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 137, 402 N.E.2d 238, 242.) Evidence of other crimes may be admitted to prove *modus operandi*, intent, identity, motive, or absence of mistake. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d 821, 824.) To show *modus operandi*, the evidence of separate crimes is relevant and admissible only upon a strong and persuasive similarity to the crime charged and the separate offense, so that a substantial and meaningful link exists between the offenses being compared. *People v. Tate* (1981), 87 Ill. 2d 134, 141, 429 N.E.2d 470, 474.

In the present case, there was insufficient evidence presented to show the prior acts of molestation were sufficiently similar to the crime charged so as to be admissible to show defendant's *modus operandi*. Additionally, they do not fall within any other exception to the prohibition against other crimes evidence. Defendant was charged with the sexual assault of a 31-year-old woman who had the mental capability of a six to eight year old. The prior acts

of molestation included incidents of molestation of a 10- and a 13-year-old girl. No details of these incidents were presented; as a result, the court had no basis on this record to conclude that they were similar enough to the crime charged to permit the State to introduce those acts as evidence of *modus operandi*. The court abused its discretion by admitting evidence of these other crimes.

On retrial, Stines and Mercedes may testify about admissions defendant made regarding this complainant, but not about defendant's conduct involving other girls. The letter defendant sent Mercedes must be redacted to remove any evidence of other crimes in order for it to be admissible.

## V. CONCLUSION

In light of our findings on the other issues, we need not address defendant's argument regarding sentencing.

Accordingly, for the reasons stated, we reverse the judgment of the circuit court of Vermilion County, and remand the cause for a new trial consistent with the views herein stated.

Reversed and remanded.

GREEN and McCULLOUGH, JJ., concur.