BERGENTHAL, Plaintiff in error, v. STATE, Defendant in error.

Supreme Court

*No. 77–460–CR. Argued October 4, 1978.—Decided October 31, 1978.*
(Also reported in 271 N.W.2d 30.)

For the plaintiff in error there were briefs by *Dominic S. Amato, John A. Fiorenza* and *Teper, Fiorenza, Weiss & Teper, S. C.,* of Milwaukee, and oral argument by *John A. Fiorenza.*

For the defendant in error the cause was argued by *William L. Gansner,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

CALLOW, J.  Issues arising out of August Bergenthal's (hereinafter the defendant) 1969 conviction on one count of murder and one count of endangering safety by conduct regardless of human life are before this court for the third time. In *State v. Bergenthal,* 47 Wis. 2d 668, 178 N.W.2d 16 (1970), *cert. denied* 402 U.S. 972 (1971), this court affirmed the judgment of conviction and sentence. In *Bergenthal v. State,* 72 Wis.2d 740, 242 N.W.2d 199 (1976), following a complete statement of the facts and legal progression of this case, we reversed a circuit court order summarily denying the defendant's motion for postconviction relief brought pursuant to sec. 974.06, Stats., and remanded the case for an evidentiary hearing. These writs of error are directed toward two orders arising out of the hearing on remand. The first denied the defendant's motion for postconviction relief. The second allowed photocopies of certain exhibits to be substituted for the originals on appeal.

In *Bergenthal v. State, supra,* 72 Wis.2d 740, this court held that it was error to deny the defendant's sec. 974.06 motion without an evidentiary hearing concerning the contents and preservation of a "brown sealed envelope." The envelope was purported to have contained the materials examined *in camera* by the trial court pursuant to the motion of the defense for production by the state of exculpatory evidence under the authority of *Brady v. Maryland,* 373 U.S. 83 (1963). The sec. 974.06 motion, in part, challenged the integrity of the contents of the envelope. This court concluded the motion raised a question of fact of constitutional proportions concerning the completeness of the record, and without an evidentiary

hearing the record was deficient. This deficiency precluded a determination of the remaining "corollary issues" raised by the motion relating principally to whether the materials examined *in camera* by the trial judge were exculpatory.

The hearing judge interpreted the remand order as limiting the inquiry to the trustworthiness of the "brown sealed envelope." He said the inquiry would consider "the trustworthiness of the document, whether there has been anything removed from it, anything added to it, any changes made with respect to it." He concluded it was necessary to go into the custodial care that was given to the material with the purpose to "ascertain what that history and chronology was."

Shortly before the hearing was to begin, a second "brown sealed envelope" was discovered, this one a brown expandable office wallet, sealed with wax, later referred to as Exhibit 12. The original envelope, Exhibit 7, was manila and was taped.

After the hearing, the court found the brown, wax-sealed expandable envelope, Exhibit 12, contained material similar to material in the first discovered brown manila envelope, Exhibit 7, with some additions and

". . . that sufficient security had been maintained over the brown manila envelope to establish its trustworthiness; that it was not made available to other parties; that as circumstances showed it was in the exclusive control of the trial court during the period of time between when it was received and when it was finally turned over to Judge Curley [who presided over a mandamus action to compel the clerk of circuit court to issue a certificate of nonfiling with respect to the 'brown sealed envelope'] except for that moment that it was taken down to the Clerk's office where it was catalogued."

The hearing judge found that Exhibit 12 "was not compromised" and "had not been opened."

The hearing judge's findings will not be upset unless they are against the great weight and clear preponderance of the evidence. *See: State v. Herro*, 53 Wis.2d 211, 215, 191 N.W.2d 889 (1971). Our review of the evidence discloses sufficient support for these findings.

Judge O'Connell, the trial judge, testified at the hearing that he only had a vague recollection of the materials he examined and the contents of the envelopes. The trial transcript refreshed his recollection that the prosecutor stated he was submitting for Judge O'Connell's *in camera* inspection the entire investigable records of the case; that the court gave the file back to the prosecutor with directions to return it so copies could be made and the file preserved for the record; that the court ordered the prosecutor to make copies of photographs submitted; and that the materials he examined were paginated.

Robert Erdmann who became Judge O'Connell's clerk sometime after the Bergenthal trial testified he searched for a missing envelope early in 1973. He could not find it then but discovered the envelope marked Exhibit 7 by chance in August, 1973, in a filing cabinet in the courtroom vault. The envelope was sealed. He showed it to Judge O'Connell who opened it, examined its contents, and resealed it.

The record reveals that prior to the hearing before Judge Landry his clerk came upon Exhibit 12. It was sealed with a wax seal and tape and bore the apparent signature of Judge O'Connell's bailiff.

We recognize that memories were dimmed by the passage of time and that all questions have not been resolved with certainty. For example, Exhibit 7 contained some documents which postdated the trial. This may be explained by Judge O'Connell's instruction to the prosecuting attorney to take the materials and return them to the

court at a later time so they could be made a part of the record. We cannot say the hearing judge's findings as to the contents and preservation of Exhibits 7 and 12 were against the great weight and clear preponderance of the evidence.

We deferred a review of the remaining issues raised in *Bergenthal v. State, supra,* 72 Wis.2d 740. We are now asked to consider the merits of that appeal and this appeal with regard to alleged exculpatory material viewed *in camera* by the trial judge and the hearing judge. This review is complicated by a new circumstance introduced into the case during the argument of the appeal. Prior to oral argument the defense had not been permitted to examine Exhibit 12 and portions of the state's file. At the time of the argument, the Assistant Attorney General withdrew the state's objection to defense counsel inspecting the state's file which included the police file. Therefore the correctness of the conclusions of both the trial and hearing judges concerning the inquiry of the exculpatory quality of the state's file cannot be considered by this court until it has been reviewed and a determination made by defense counsel whether a further evidentiary hearing in the trial court is to be requested. The balance between the right of the state to maintain the confidentiality of files and the right of the defendant to have the use of exculpatory material has produced a compromise resulting in judicial *in camera* inspection of the requested material. When the state consents to the requested inspection by defense counsel, the defendant must be given the opportunity to present to the hearing court the enlightened position of the defense concerning the alleged exculpatory nature of the information.

We recognize the fact that the defense has examined Exhibit 7, and the hearing judge has rendered his decision on the exculpatory nature of its content. We de-

cline, however, to consider that decision in this appeal since that which will now be examined for the first time by the defense may relate to Exhibit 7 and, therefore, may be the subject of a further hearing on the merits of the issue of the exculpatory nature of all the materials now available to the defense by reason of the state's consent.

We decline to consider the merits of the argument of the defense that the hearing judge erred in permitting the substitution of photocopies for certain exhibits received in evidence. The defense may now examine the originals and make a record in the hearing court as to any inconsistencies between the originals and the photocopies. Upon that record the hearing judge shall make findings of facts concerning the adequacy of the reproductions.

*By the Court.*—Orders reversed and cause remanded for proceedings consistent with this opinion.