**Troy Lynn SPENCER, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 15953.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 29, 1989.

Melinda K. Pendergraph, Columbia, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

CROW, Presiding Judge.

This is an appeal by Troy Lynn Spencer ("appellant") from a judgment denying his first amended motion under Rule 27.26, Missouri Rules of Criminal Procedure (18th ed. 1987),[1] to vacate his conviction and 15–year prison sentence for the class B felony of sodomy, § 566.060, RSMo Cum.Supp. 1984. The conviction resulted from appellant's plea of guilty.

In denying relief the circuit court ("the motion court") conducted no evidentiary hearing but did take into account the transcript of the proceeding at which appellant entered the plea of guilty, together with the transcripts of three subsequent proceedings that ultimately resulted in execution of the sentence appellant attacks. The judge who conducted those four proceed-

---

1. Rule 27.26 was repealed effective January 1, 1988. Missouri Rules of Court (19th ed. 1988) p. 142. However, appellant's action continues to be governed by Rule 27.26, as his sentence was pronounced prior to January 1, 1988, and his motion to vacate such sentence was pending prior to January 1, 1988. Rule 24.035(*l*), Missouri Rules of Criminal Procedure (19th ed. 1988).

ings was the Honorable Anthony J. Heckemeyer.

Appellant's brief presents one point:

"The motion court clearly erred in denying appellant's motion for post-conviction relief without granting an evidentiary hearing pursuant to Rule 27.26(e) on the issue of whether appellant was denied a fair and impartial judge during his guilty plea and sentencing because the record leaves a firm conviction that a mistake has been made in entering such judgment in that appellant pleaded factual allegations that ... Judge [Heckemeyer] was influenced by powerful persons, this fact was not refuted by the record as the transcript of the sentencing proceedings contained repeated references by the sentencing judge to powerful people and powerful interests who wanted appellant 'put away.'"

On June 28, 1985, an information was filed charging appellant with sodomy. On August 8, 1985, appellant, his lawyer,[2] and the prosecutor appeared before Judge Heckemeyer. Because of appellant's hypothesis of error it is necessary to set forth extensive excerpts from the transcript of that proceeding and later proceedings. The transcript of the August 8, 1985, proceeding shows:

"The Court: ... On 7–25–85 you ... entered a plea of not guilty. I am advised today that you wish to change that plea to guilty; is that correct?

[Appellant]: That's right.

The Court: When we first discussed this, I advised you that I had handled your case in the Juvenile Court; do you remember that?

[Appellant]: Yes, sir.

The Court: We did not have an evidentiary hearing at that time. Do you have any objection to me handling the case? I don't think I have any disqualifying knowledge of you other than the treatment program that you voluntarily entered into through that program, but if there is any problem, you certainly have the right for me to step down. I don't care either way.

[Appellant]: Your Honor, I am satisfied that your judgment would be just, and I hope merciful, and I am willing to lay down some of the things that might be preceded with in order to arrive at some final condition.

The Court: The Court finds that basically there was no evidentiary hearing of any kind. The Court had an ongoing juvenile file case which still is ongoing and Mr. Spencer is in treatment in that or in family counseling in that program. I find nothing disqualifying about that, but I certainly want to put it on the record and give Mr. Spencer every opportunity to have another judge appointed if he wanted.

Based on his statements that he does not want to, do you have any problem with that, Counsel?

[Appellant's lawyer]: No, sir; I do not, so long as Mr. Spencer is satisfied, I am satisfied."

Judge Heckemeyer began explaining to appellant the procedure for entering the plea. This colloquy ensued:

"The Court: How old are you?

[Appellant]: 35.

The Court: You are married and you have one child?

[Appellant]: Two children, sir.

The Court: What do you do for a living?

[Appellant]: I work as a hearing aid fitter.

. . . .

The Court: How far in school did you go?

[Appellant]: I have nearly two years of college.

. . . .

The Court: Has [your lawyer] done what you have asked him to do?

[Appellant]: Yes, Your Honor.

The Court: Is there anything you have asked him to do that he has not done?

[Appellant]: No, Your Honor.

. . . .

---

**2.** A different lawyer than the one representing appellant in this appeal.

The Court: Are you satisfied with his work?

[Appellant]: Yes, sir.

....

The Court: Has anyone threatened you, harmed you or mistreated you or any member of your family in any way to get you to make this plea?

[Appellant]: No, Your Honor.

The Court: Do you make the plea of your own free will because you did the things that you are charged with?

[Appellant]: Yes, Your Honor.

The Court: Mr. Prosecutor, let me have the facts as you believe they would be presented in the event of a trial....

[Prosecutor]: Judge, during the month of January, 1985, I believe in particular on January 21, Mr. Spencer subjected [the female victim] to deviate sexual intercourse by having her perform oral sex on him, [she] being less than 14 years of age.

The Court: You heard the statement of the prosecutor. Is that statement substantially correct?

[Appellant]: Substantially correct, Your Honor.

The Court: ... is there a plea bargain?

[Prosecutor]: No, sir.

The Court: Do you understand it is an open plea? There is no recommendation to this Court; do you understand that?

[Appellant]: Your Honor, I did understand through my attorney that with a plea of guilty, that the prosecutor ... had no objection to probation being exercised.

The Court: Basically, I think that's what an open plea is.

[Prosecutor]: It really depends on what the P.S.I. shows and his efforts and progress in dealing with Mr. David Brown at the Farmington State Hospital. I have no idea what those things are going to show at this time.

The Court: I think normally an open plea, the prosecutor stands blank. There is a P.S.I. I presume you understand what that is, a presentence investigation done by the Division of Probation and Parole, and they will make a recommendation. But as to the plea bargain, do you understand what a plea bargain is?

[Appellant]: Well, I didn't, but I do now.

The Court: If a plea bargain is offered the Court, I can accept it or refuse it. I am not bound by it. But if I accept it and deviate from the terms of it, I have to go back from this point again and tell you that I will not accept it, and then you will have the opportunity to withdraw your plea. That's really what a plea bargain is. It doesn't bind the Court, but in this case the prosecutor is standing mute. He is not offering a plea bargain.

[Appellant]: I accept that, Your Honor."

Judge Heckemeyer then informed appellant of the range of punishment (imprisonment for a term of years not less than five and not to exceed fifteen), and explained a number of appellant's rights. Then, this:

"The Court: ... If I accept your plea, these rights we have talked about are gone. You will have them no longer. There will be no trial....

Knowing that, do you still wish me to accept the plea?

[Appellant]: Your Honor, I don't wish to wrestle against anyone. I wish to have judgment tempered with, I hope, mercy, for I hope—well, you said earlier that no one standing where I stand is ever going to do it again. I have nothing to add to that.

The Court: Basically, you do want me to go on and accept the plea of guilty?

[Appellant]: Please do."

Judge Heckemeyer found that appellant's plea of guilty was made voluntarily and intelligently and with full understanding of the charge and consequences of the plea and of the rights Judge Heckemeyer had explained. Judge Heckemeyer further found there was a factual basis for the plea. Judge Heckemeyer accepted appellant's plea of guilty, found appellant guilty of the class B felony of sodomy, and ordered a presentence investigation. Appellant, free on bond, remained at liberty.

Some three months later, on November 14, 1985, appellant, his lawyer, and the prosecutor reappeared before Judge Heckemeyer, at which time the judge sentenced appellant to 15 years' imprisonment followed immediately by this:

"The Court: ... Now, Mr. Spencer, I am going to place you on probation. It is going to be a different kind of probation than some.... I will place you on probation on the condition that you attend and successfully complete the—I don't know the name of it, but is an offender program the Division of Probation and Parole has in Fulton. At the completion of that program, you will be put back into the family and into the community. I want you to continue your supervision with Mr. Brown, the person that's working with you.... And I am sure your family will continue in the meantime to receive counseling that they have.

Now, that is a strange sentence in a way, Mr. Spencer. You are not of this world. You are a first timer, and yet you draw a maximum sentence, but yet you don't go to jail. See, it's sort of a compromise of all the different elements. There are many people that believe you should be put away. There are people who in the interest of your family do not believe that you should be put away. There are people that believe if I put you away, that your daughter will wind up being the person that carries the guilt burden through her life, which I suspect is true. Only you can control that. I suspect the counselers [sic] will tell you about that.

I have no great desire to see you incarcerated. Perhaps you are someone that they can salvage. They advise me that you are smart enought [sic] and capable, that if they can work with you, everything will be fine, and I suspect your family needs you bad enough that I am not going to take you out a long time, but I have given the people who need the protection a mighty weapon that they can use if they have to. That is, you have no doubt that if you appear before this Court again I will sentence you for a term of 15 years.

I have spent more time on your sentence trying to determine what is wise in this case. I don't know whether it is wise, but than on any other person that I have sentenced sitting five years on the bench. I don't know if this is the correct sentence. It appears to be the thing that gives your family and your child a chance. It is something that you can work your way through. You can do it. If not, then the retribution will be terrible.

. . . .

We will start the probation as of now. Your probation will be for a term of five years. They will access you into the program.... The conditions are as I said, you will complete the sexual offender program in Fulton. After that you will avail yourself of the treatment from Mr. Brown and any other counseling treatment programs that the Division can provide for you to the end that hopefully your family gets back to you.

. . . .

I have tried to explain to you the sentence, because it is a sort of combination of everything. I hope it benefits you and your family and your daughter.

[Appellant's lawyer]: Thank you."

Ten weeks later, on January 23, 1986, appellant, his lawyer, and the prosecutor appeared a third time before Judge Heckemeyer. The transcript shows:

"The Court: ... Are you Mrs. Spencer?

Mrs. Spencer: Yes, I am.

The Court: I presume they have explained to you—

Mrs. Spencer: Pretty well.

The Court: We have gotten him into the treatment program that originally they would not keep him in, and we have as much as told them they will need to keep him, and we have worked out the availibility [sic] of that program for him.

I need to order ... you transferred back into that program, and they are going to work with you. Do you have any questions? Is there anything that you-all don't understand?

Mrs. Spencer: Judge Heckemeyer, is there anything that we could get into in a facility closer?

The Court: There is no other facility. That is the only treatment program that I am aware of of that magnitude that is within the structured system that we possess.

[Appellant]: Your Honor, may I speak?

The Court. Yes.

[Appellant]: Initially at Farmington State Hospital the recommendation was for outpatient therapy for my family and myself. I read the Fulton State Hospital report and it also in the last paragraph recommended outpatient treatment. I wonder, Your Honor, if the trauma of being in prison will not make me worthless to my family ultimately?

The Court: This is not prison. In fact, I have spent a great deal of time keeping you out [of] prison, more than you will ever know. This program is the tail end of a prison program. You have to stay, but it is a treatment program. It is not prison. You were sentenced to 15 years in the penitentiary, but you were not committed, and there were very powerful interests for wanting you put away and still believe that you should be put away. There are people today that believe you should be incarcerated, have no doubt of that. In fact I am not persuaded. You will have to seek, you, Mr. Spencer. I am not trying to hurt your feelings. You play mind games with people and you are not going to win the mind games. I have got that many reports on you (indicating) and I am persuaded today as I was when I first talked to you, I believe that you are ill. I have always believed that you were ill. I believe you have a very embracing personality that you don't even understand. It doesn't bother me, because I handle hundreds of people. You couldn't get under my hide with a hammer. You don't have that capability, but you do have the capability to get under other people's hides. One of the reasons they rejected you from this Fulton system in the first place is because you didn't want to be there and

you are clever. You are not a stupid man. You know how to manipulate a system. You have behavioral problems. I am not a psychiatrist. I don't know how to deal with you because you are smarter than the average person in some respects, and in other respects you are still a child. Emotionally in your dealings with other people, I am astounded how inept you are. You have the ability to infuriate people and you don't even know you are infuriating them, and you have the ability to manipulate people, and here I am trying to keep your life in balance. You would have been gone for 15 years a year ago if it wasn't for me. There were powerful people that said, 'This guy is a nut, and he's not only a nut, he's a dangerous nut,' and if you will look over your record, you have the ability, and I know you have no way to understand. I have tried with all the power in me to get you treated, and I am not satisfied that these outpatient things do a dadgone thing, just between you and me, and the world of psychiatry is a very inexact science anyway, and I have got a lot of faith in many of them, but you have to have something serious and real, not a little word game. You can play that forever.

But, Mr. Spencer, if they don't do well with you in a year, you will ultimately do the 15 years in the penitentiary. That's a fact. I have said things to you before that you don't understand. You must understand what I am telling you. I have spent time because I am satisfied that you are ill. That's my only interest. If I thought you were as bad as some people do, you would be in the penitentiary. I don't think you are bad. I think you are ill. I think you have problems that I don't understand, because every person, and I look closer than you think at what is going on, I get all these psychiatric reports and about 80 percent of them are hooey. You can fool one of those guys in two or three hours, and I could too, but there is something wrong. Don't you know that? Don't you know

that your life is so tumultuous because something is wrong?

[Appellant]: Your Honor, I know what the treatment program was in Fulton.

The Court: One of your problems is you know so much more about each one of them, that you in a few hours have already analyzed their program and have already evaluated it and decided whether it's going to do you any good or not.

[Appellant]: ... I came in saying the counselor was doing me little good. The Director of Fulton State Hospital could tell you a similar story without any prompting. When I heard him say that, I knew there was an agreement. What I said to you was not a lie or presumptuous, but was spread from here to the staff at Fulton.

The Court: Well, you see the problem is you see only one tiny piece of the picture. See, I have had exactly the same report on the programs you want to go to. You are picking the one you handle best, not necessarily the one that is the best, but that's besides the point. The only capability I have is to get treatment in that program available to you. We have spent a lot of time and energy getting you into this program. Anything else you would lose on.

[Appellant]: Your Honor, one final word I must speak. If these powerful people who have found me so abrasive are not the judge, but you are the judge, and I am asking for my family's sake. My family wants me home. The therapist for my wife and children has heard everyone who has the understanding to speak what they want say that they would like to see their father returned and husband returned. Well, would the Court not consider those things?

The Court: I have considered those things at length. You have a totally disfunctional [sic] family that is probably right now as in serious trouble as any family in my circuit.

[Appellant]: Has Fulton given you this information?

The Court: I have reams of information on you, Mr. Spencer. It would stun you what I know about you. I know more about you than probably any 10 people I sentence. I have more psychiatric screens, scans and reports on you than any 10 people I have ever sentenced in my life.

Do you know why you are getting the benefit of the doubt? Because when you first contacted me, I didn't like you either, and you have an advantage. When a judge does that, he will immediately either disqualify himself or he will supress [sic] that immediately and go the other way. See, you have to be neutral. I have to be totally neutral. If I try to sentence somebody and I don't like them, I won't sentence them. I would never try to sentence you if I had a personal feeling about you one way or the other, and the second that happened to me, I immediately stopped and began to think what is it about this man that offends me? Then I realized the problem is I seen an illness, and the more interested I got into you, the more deeply I tried to find some help for you. We could go on at length. This is the course we will follow, and I think that—I don't know that it will work, but it's the only one I have available. It's the best shot I have for you.

I guess we will take him into custody to transfer him to the Fulton program."

At that point appellant announced he had arranged to stay that day and the next day at the "Salvation Army in Cape." Judge Heckemeyer asked a probation officer to verify those arrangements, and warned appellant that if he did not appear at the Fulton program there was a 15–year sentence.

Judge Heckemeyer's docket sheet shows that on January 28, 1986, five days after the hearing, a capias warrant was issued for appellant's arrest. He was arrested February 8, 1986. On February 27, 1986, appellant appeared without counsel before Judge Heckemeyer. The prosecutor was present. Appellant announced he was unable to retain the lawyer who had represented him at the three earlier proceedings, as appellant was "broke." Judge Heckem-

eyer advised appellant he could make application for representation by the public defender. Appellant responded, "Your Honor, I wish to face that which is ahead and go on with my life, and I will speak what I have to say and be done with it." After further discussion appellant reasserted his wish "to face now what is ahead without delay." This colloquy ensued:

"The Court: All right, you may proceed.

[Appellant]: When Your Honor ordered me to return to Fulton in view of the referral for out-patient treatment, I was astonished.

I had asked them when I was there, I said was it not important that I have the good habit of everyday working to be fully rehabilitated for my crime, and they gave no response, and it is my feeling that a very important piece of information was missing from the evaluation, that in any crime there's two things that happen: one is the way they think, motive; and the other is opportunity. And I earnestly desire to be able to work. I have not worked steadily for over a year and did not work steadily prior, for during the time I was offending my daughter. I believe the source of my problem has been not working steadily. My counselor at Farmington required me to take a job that I had lost during the course of sentencing, because the outcome was uncertain.

When I left the State, it was not to disobey the Court, it was to be allowed to work. I have nothing that I can add to that. I did violate my probation. I have given the reason that I did. I ask the Court for mercy.

The Court: You understand that the last time you and I appeared, I advised you that it was very, very important that you appear on that date. I even released you to your own trusting that you would do what you said, and then you didn't. Do you understand that?

[Appellant]: Your Honor, I understand that my feelings were very firm in that the referral from Fulton was outpatient.

The Court: I understand that.

[Appellant]: I did not understand how they could reverse themselves.

The Court: What you understand about treatment, you and I have discussed before, you agree to do a certain thing that would have kept you from being incarcerated. I have done all I know how to do to be of assistance to you, because I firmly believe that you need assistance. I don't know how to get it for you. I have probably done more to try to get assistance for you than any person that I have had in five years on the bench. I cannot provide any more. I don't have any more to provide. I moved a lot of stones to try to get that for you, truely, [sic] you might say required them to consider your case again so that I could try to get you some help.

If you don't know that you need help, I am sorry about it. I don't know what to do. I have probably suffered more on your sentence than any sentence in five years because I am persuaded that you need help, but without your cooperation I cannot get it, and you have proven to me that you will not do what I require. You will do what you require, and for that reason I have no more energies that I can divert to you. I am going to order the sentence executed.

Mr. Spencer, I am going to write them a letter, and I am going to explain to the prison my thoughts on the matter and what I believe, which I believe down the road will be of assistance to you. You have got a stiff sentence. The reason was to try to impress upon you that you must do what you are required to do. You must submit yourself to the dominion of the more powerful interest. The interst [sic] of the public is a powerful interest. You have taken my alternatives away from me...."

Judge Heckemeyer thereupon revoked appellant's probation and ordered the sentence executed.

Appellant's first amended motion to vacate under Rule 27.26 alleged numerous grounds for relief, however the only one

pertinent to this appeal is paragraph 8(e) which averred:

"[Appellant] was denied due process of law in violation of the fifth, sixth, and fourteenth Amendments of the United States Constitution in that he was denied being sentenced by a fair and impartial judge because the sentencing judge was unduly prejudiced against [appellant]."

Paragraph 9(e) of appellant's first amended motion set forth the following factual allegations in support of the above ground:

"(i) [Judge] Heckemeyer ordered, as a condition of [appellant's] probation, that he be committed to the Biggs Forensic Center at Fulton State Hospital which would have resulted in [appellant] being confined for a period of two and one half to three years ... despite recommendations from caseworkers, counselors, and psychologist's [sic] that [appellant] be placed on probation and treated on an out-patient basis.

(ii) [Appellant] was, at the time of sentencing a first time offender and [Judge] Heckemeyer imposed upon [appellant] a sentence of fifteen (15) years, the maximum term of years allowed under the law.

(iii) [Judge] Heckemeyer's decision to order [appellant] committed to Biggs Forensic Center as a condition of his probation, rather than ordering [appellant] to continue out-patient treatment, was predicated upon the beliefs and influences of 'very powerful interests' and 'powerful people,' the identities of which were never made known to [appellant]."

The motion court's findings of fact and conclusions of law relevant to the above allegations were:

"[Appellant] alleges that the sentencing Judge was prejudiced against him and that his judgment was influenced by other persons.

The transcript of the guilty plea shows that Judge Heckemeyer clearly informed [appellant] of his right to have another Judge and in fact went to some lengths to state that he had prior information about the case from a juvenile proceed-ing involving the victim. [Appellant] clearly stated he was satisfied with Judge Heckemeyer hearing the guilty plea and sentencing him.

As for being influenced by 'other powerful persons', Judge Heckemeyer went to great lengths at the taking of the guilty plea and subsequent sentencing to point out to [appellant] that he was not going to imprison [appellant] while many people in the county in fact wanted [appellant] imprisoned. Judge Heckemeyer in the alternative placed [appellant] on probation with a condition being that [appellant] submit to a sex offender program at Fulton State Hospital. [Appellant] did not readily submit himself to the program and in fact absconded from supervision by running away to Oklahoma. This was a clear indication of [appellant's] lack of willingness to comply with the conditions of probation; not Judge Heckemeyer searching for a way to revoke [appellant's] probation. The record clearly shows that Judge Heckemeyer bent over backwards to *NOT* be influenced by 'powerful persons'."

The motion court, as reported at the outset of this opinion, denied relief without an evidentiary hearing. Appellant, at the conclusion of his brief, prays that we reverse the judgment of the motion court and "remand the cause for an evidentiary hearing on the issue of whether appellant was denied a fair and impartial judge in sentencing." Our task is to determine, on the record before us, whether such relief is warranted.

■ Appellant acknowledges that in order for a prisoner seeking relief in a post-conviction proceeding under Rule 27.26 to be entitled to an evidentiary hearing he must satisfy three requirements: (1) the motion must allege facts, not conclusions, which if true would warrant relief, (2) such facts must not be refuted by the files and records in the case, and (3) the matter complained of must have resulted in prejudice to the prisoner. *Weeks v. State,* 771 S.W.2d 353, 354 (Mo.App.1989); *Sand v. State,* 762 S.W.2d 97, 98[1] (Mo.App.1988);

**436**

*Ahart v. State,* 732 S.W.2d 256, 257[1] (Mo. App.1987).

■ Appellant maintains requirement 1 was satisfied by his allegation that Judge Heckemeyer, in deciding what sentence to impose, was influenced by powerful people, requirement 2 was satisfied in that the record does not clearly refute the preceding allegation, and requirement 3 was satisfied by the fact that appellant received the maximum sentence of 15 years and his probation contained the unusual condition that he be confined in Fulton State Hospital for a treatment program.

We commence our deliberation by observing that the record contains more than the bare allegation in appellant's first amended motion that Judge Heckemeyer was influenced by powerful interests and powerful people. Starting with the proceeding of November 14, 1985, Judge Heckemeyer himself alludes in open court to the sentence being "strange" and "a compromise," to many people who believe appellant should be put away, to very powerful interests who want appellant put away and believe he should be put away, to appellant's ability to infuriate people, to powerful people who say appellant is a "dangerous nut," to the judge's own initial dislike of appellant, and to the submission of appellant to the dominion of the more powerful interest.

We recognize, as the State's brief points out, that Judge Heckemeyer may have been trying to impress on appellant that while there was community pressure to assess a severe sentence, the judge was standing firm against such forces and was endeavoring to allow appellant a chance, through probation, to rehabilitate himself by receiving professional treatment instead of being incarcerated in a penal institution, and that to motivate appellant to avail himself of such opportunity the judge assessed the 15–year sentence so appellant would understand he would be imprisoned a long time if he spurned the chance for rehabilitation.

We do not second-guess Judge Heckemeyer's decision to assess the 15–year sentence and to suspend its execution and place appellant on probation subject to the condition that he successfully complete the sexual offender treatment program at Fulton State Hospital. Judge Heckemeyer had the opportunity to observe appellant in person and the benefit of the presentence investigation report plus, according to the judge, "reams of information" about appellant. The troubling aspect of this case is not Judge Heckemeyer's structuring of the sentence, but is instead his own references in the record to the unnamed powerful people and powerful interests who wanted appellant imprisoned.

The record does not show how the judge became aware of those sentiments. It is possible, of course, that such opinions were expressed in the news media and the judge could not have avoided exposure to them. It is also possible, however, that such beliefs were communicated to the judge by signed or anonymous letters or in private conversations. Or, it may have been that the presentence investigation report spoke about community sentiment. The record supplies no enlightenment.

■ A judge should conduct himself in a manner that promotes public confidence in his integrity and impartiality. *State v. Finley,* 704 S.W.2d 681, 683 (Mo.App.1986). A judge should not, except as authorized by law, initiate or consider ex parte or other communications concerning a pending proceeding. Rule 2, Code of Judicial Conduct, Canon 3 A.(4) (1975). As said in *State v. Lovelady,* 691 S.W.2d 364, 365[1] (Mo.App.1985), the law is very jealous of the notion of an impartial arbiter; it is scarcely less important than his actual impartiality that the parties and the public have confidence in the impartiality of the arbiter.

Appellant, as we comprehend his brief, does not maintain it was error for Judge Heckemeyer to decline to recuse sua sponte.[3] Appellant asks only that we grant

3. In a reply brief evidently authored by appellant pro se he insists that because of the earlier juvenile proceeding Judge Heckemeyer had the duty to remove himself from the subject case *ab*

him the opportunity to demonstrate—if he can—at an evidentiary hearing that he was denied the right to be sentenced by a fair and impartial judge. We have concluded he is entitled to that chance.

We are mindful, as emphasized by the State, that Judge Heckemeyer proclaimed to appellant that he (the judge) was unswayed by the forces that wanted appellant imprisoned. One can reasonably infer as much from the fact that Judge Heckemeyer revoked appellant's probation and ordered the 15-year sentence executed only after appellant absconded in defiance of the judge's order of January 23, 1986, to report to Fulton State Hospital. The motion court, as we have seen, found the record clearly showed that Judge Heckemeyer "bent over backwards" to not be influenced by powerful persons.

The problem is that the powerful people and powerful interests whose existence is confirmed in the record by Judge Heckemeyer are not identified, the method by which their sentiments were communicated to the judge is not disclosed, and the content of such communications remains unknown. It is noteworthy, however, that after the proceeding of November 14, 1985, at which Judge Heckemeyer made it a condition of appellant's probation that he successfully complete the sexual offender treatment program at Fulton State Hospital, the staff at that institution recommended appellant be treated as an outpatient. It appears from the hearings of January 23, 1986, and February 27, 1986, that Judge Heckemeyer prevailed on the administration of Fulton State Hospital to admit appellant to that facility as an inpatient and, in the judge's words, "as much as told them they will need to keep him." Appellant insists Judge Heckemeyer did so

to appease community pressure that appellant be confined. Until such matters are aired before an independent fact finder the question of whether Judge Heckemeyer's sentencing decisions in appellant's case were affected by outside forces will remain unresolved.

Our conclusion that an evidentiary hearing is required is not a signal that a prisoner will be entitled to an evidentiary hearing merely upon alleging that the judge in his case was motivated by extrinsic influence. As noted earlier, the record in the instant case contains confirmation by Judge Heckemeyer that such forces existed and that he was aware of them. We are not, consequently, dealing with a prisoner's conclusional allegation that a judge's decision was affected by outside pressure. Here the existence of powerful forces and the judge's knowledge of them is established, hence the questions for determination are (1) how the sentiments of such entities were communicated to Judge Heckemeyer, and (2) what effect, if any, they had on the judge's sentencing decisions in appellant's case. An evidentiary hearing is the only means of answering those questions.[4]

The scope of the motion court's duty on remand is limited to a resolution of the questions posed in the preceding paragraph. While appellant's first amended motion pled sundry other grounds for relief, no error is assigned in this appeal regarding the motion court's rejection of them, hence they are deemed abandoned. *Herron v. State*, 498 S.W.2d 530, 531[1] (Mo.1973); *Brown v. State*, 492 S.W.2d 762, 762–63[1] (Mo.1973).

Should the motion court, after an evidentiary hearing, find that Judge Heckemeyer's sentencing decisions were not influ-

*initio* despite appellant's acquiescence on the record to Judge Heckemeyer remaining in the case. That ground for relief was not asserted in appellant's first amended motion in the motion court, hence it is not cognizable on appeal. *Barber v. State*, 639 S.W.2d 180, 181[2] (Mo.App. 1982); *Moore v. State*, 624 S.W.2d 520, 522–23[4] (Mo.App.1981). The reply brief also hypothesizes, on tedious and convoluted reasoning, that appellant's sentence should be vacated because Judge Heckemeyer rewrote it on January 23, 1986. That contention is likewise not

reviewable in this appeal as it was not tendered in the motion court.

4. Either appellant or the State may wish to subpoena Judge Heckemeyer as a witness at the evidentiary hearing. While it is uncommon for a judge to be a witness at such a proceeding, it is not unprecedented. *See: Bergenthal v. State*, 85 Wis.2d 590, 271 N.W.2d 30 (1978); *People v. Dennis*, 28 Ill.App.3d 74, 328 N.E.2d 135 (1975).

enced by the powerful people and interests alluded to by him, the motion court shall deny relief. If the motion court finds, after an evidentiary hearing, that the outside forces did affect Judge Heckemeyer's sentencing decisions in appellant's case, the motion court shall enter an order setting aside appellant's sentence—*not* his plea of guilty, just his sentence. Appellant makes no contention that his plea of guilty was improvidently entered, but only that his sentence was assessed by a biased judge. That defect, if the motion court finds it exists, can be remedied by vacating appellant's sentence and entrusting the task of sentencing to a judge other than Judge Heckemeyer.[5]

The motion court's denial of relief is affirmed as to all grounds except appellant's allegation that Judge Heckemeyer's sentencing decisions were influenced by "very powerful interests" and "powerful people." As to that ground alone the order of the motion court is reversed and the cause is remanded to the motion court for further proceedings consistent with this opinion.

HOLSTEIN, C.J., and GREENE, J., concur.

**5.** Similar relief was granted by an appellate court in a case factually analogous to this one. *People v. Sumner,* 40 Ill.App.3d 832, 354 N.E.2d 18 (1976).